# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 02-4133

————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Mario Gonzales-Ortega, also known | * | |
| as Daniel Cano, | * | |
| | * | |
| Appellant. | * | |

————————

Submitted:  June 10, 2003

Filed:  October 10, 2003

————————

Before BOWMAN, BEAM, and BYE, Circuit Judges.

————————

BOWMAN, Circuit Judge.

Mario Gonzales-Ortega pleaded guilty to illegally reentering the United States. See 8 U.S.C. § 1326(a) & (b)(2) (2000). The District Court[1] determined that Gonzales-Ortega's criminal history level of VI did not adequately reflect the defendant's criminal history and the likelihood that he would commit future crimes

_____

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

and departed upwards by five offense levels and sentenced him to 150 months in prison. Gonzales-Ortega appeals this departure and we affirm.

The recently-enacted PROTECT Act requires that a district court "state[] with specificity" in the "written order of judgment" its reasons for departing upwards or downwards from the applicable sentencing guideline. See PROTECT Act, Pub. L. No. 108-21, § 401(c), 117 Stat. 650, 669 (2003) (amending 18 U.S.C. § 3553(c)); United States v. Aguilar-Lopez, 329 F.3d 960, 962 (8th Cir. 2003). The Act also requires that we apply a de novo standard of review when the sentence imposed is outside the applicable guideline range *and* the departure has not been justified in a written order *or* the departure is based on a factor that: "does not advance the objectives set forth in section 3553(a)(2)"; "is not authorized under section 3553(b)"; or is simply "not justified by the facts of the case." See PROTECT Act, Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003) (amending 18 U.S.C. § 3742(e)). Although Gonzales-Ortega was sentenced before the PROTECT Act became law, the Act, because it is procedural in nature, does apply to his pending appeal. United States v. Hutman, 339 F.3d 773, 775 (8th Cir. 2003).

In this case, the District Court determined an upward departure was warranted under United States Sentencing Guideline (U.S.S.G.) § 4A1.3 (2002) because Gonzales-Ortega's "criminal history category significantly underrepresents the seriousness of the Defendant's criminal conduct or the likelihood that the Defendant will commit further crimes." Transcript of Sentencing Hearing at 29. Gonzales-Ortega's base offense level was twenty-one and his total criminal history score of thirty-one put him in category VI. Thus, his initial sentencing range was 77–96 months. For a defendant to reach category VI, however, only a criminal-history score of thirteen is needed. Thus, Gonzales-Ortega was eighteen criminal-history points above the minimum required to place him in category VI. When it structured the departure, the District Court departed upwards one offense level for every three such criminal-history points. This resulted in an increase in Gonzales-Ortega's base-

offense level of only five levels (15÷3=5) rather than six levels (18÷3=6), because the District Court reasoned that if there were criminal history categories above category VI, category VI would include points thirteen through fifteen, the next category would include points sixteen through eighteen, and so on. The District Court did not increase Gonzales-Ortega's sentence by a sixth offense level to reflect the sixteenth criminal-history point that fell beyond the five-level increase in question. The departure placed Gonzales-Ortega in offense-level 26 and the District Court sentenced him at the highest end of the 120–150 month range. Gonzales-Ortega now appeals this sentence.

The Sentencing Guidelines instruct that where a defendant's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the [district] court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3. Normally, § 4A1.3 explains, such a departure is structured by moving horizontally within the Guidelines, from criminal history category III to IV, for example. When the defendant is within category VI, however, this is not possible and the Guidelines instruct that in these cases "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." Id. This is all the guidance that the Guidelines provide for structuring such a departure. The Guidelines do note that the nature of the prior offenses and not the sheer number of prior offenses "is often more indicative of the seriousness of the defendant's criminal record." Id. Consequently, a district court should consider the nature and extent of a defendant's criminal history when contemplating and structuring an upward departure from category VI.

Our review of Gonzales-Ortega's criminal history convinces us that the District Court did not err when it increased his offense level by five levels and sentenced him to 150 months in prison. Gonzales-Ortega's criminal history is extensive to say the

least. By our count, Gonzales-Ortega has more than thirty prior adult convictions of record, many of which were not included in his criminal history score. It is true that a number of these offenses were for "petty" crimes or for intoxication offenses, but these petty offenses do not properly characterize Gonzales-Ortega's criminal history. Rather, his is a criminal history replete with drug crimes, illegal entries and deportations, and a more recent turn towards violence and other crimes that present an obvious and growing danger towards society. Gonzales-Ortega's habit of being deported, returning to the United States, and being deported again (usually after committing another crime) is particularly troublesome. He is not an illegal alien who has spent years or decades within the United States as a productive member of society. Instead, Gonzales-Ortega has apparently repeatedly returned to the United States in order to commit crimes. Further, Gonzales-Ortega is not an individual for whom incarceration appears to have had any deterrent or reforming effect for he has had his probation revoked on at least ten occasions and has spent a large portion of his adult life in prison. Accordingly, we can discern nothing unreasonable in the extent of the District Court's upward departure, which, after all, leaves Gonzalez-Ortega's sentence well below the statutory maximum of twenty years for the offense of which he stands convicted in this case. See 8 U.S.C. § 1326(b)(2).

Gonzales-Ortega's related claim is that the District Court's method of computing the departure was not authorized by the Guidelines, which, he points out, do not feature a "point system for departures." Brief of Appellant at 5. But this argument proves too much for there is in fact little guidance at all within the Guidelines on the method for computing an upward departure for a defendant with a Criminal History Category of VI. Here, the defendant got as much mercy as he reasonably could expect where the sum total of guidance given to the District Court regarding methodology was that it should "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3. Gonzales-Ortega faced a District Judge who effectively cabined his

-4-

discretion and imposed a "conservative" sentence that was not "unduly punitive." See Transcript of Sentencing Hearing at 33. The District Court, in its discretion, chose to impose on its upward departure the same structure that the Guidelines impose on sentences (i.e., for categories III–VI, one criminal history category per three criminal history points). We see no error in the District Court's method of determining the extent of the upward departure. So long as district courts do not impose an upward departure that is unreasonable in its extent, we think they should be free to use whatever method they choose in determining the extent of the departure, provided the method chosen is not inconsistent with the Guidelines. We see no such inconsistency here.

We cannot agree with Gonzales-Ortega's claim that this and other circuits have already rejected "mechanistic" approaches to sentencing. Rather, in the cases cited, see, e.g., United States v. Leaf, 306 F.3d 529, 533 (8th Cir. 2003), we rejected the notion that district courts do not have discretion and "that district courts must take a mechanistic approach to departures based on criminal history." In the present case, the District Court was aware of its broad discretion in fashioning an upward departure and the court exercised that discretion to reach a result that was both fair and not inconsistent with the Guidelines. And, while we note that the Tenth Circuit's opinion in United States v. Walker, 284 F.3d 1169, 1173 (10th Cir. 2002), questioned the reliance on the sheer number of a defendant's past convictions when structuring a departure from criminal history category VI (because such reliance "could create a de facto criminal history category higher than category VI"), Walker does not guide this case. Although it is self-evident that the Guidelines do not feature numerically higher criminal history categories, they also explicitly provide for upward departures for defendants, such as Gonzales-Ortega, whose criminal exploits have literally put them off the charts. In such cases, the Guidelines provide limited guidance for sentencing recidivist offenders and merely require that a District Court keep moving "down the sentencing table . . . until it finds a guideline range appropriate to the

case."[2]  U.S.S.G. § 4A1.3.  Moreover, the Guidelines, if they are anything, are mechanistic insofar as they compute sentences based on offense levels (plus or minus enhancements and reductions) and the defendant's criminal history score.  The principal virtue of the Guidelines lies in this regularization of the sentencing process. Though the approach taken by the District Court is not the only method for sentencing off-the-chart offenders such as Gonzales-Ortega, we can perceive nothing unreasonable in the District Court's method of exercising its discretion in determining the extent of the upward departure at issue in this case.

For the reasons stated, the judgment of the District Court is affirmed.

_____

---

[2]This lack of guidance is surely not surprising for whatever wisdom the Guidelines contain as a result of basing sentences on a combination of offense conduct and criminal history has surely run its course in the case of individuals such as Gonzales-Ortega whose criminal histories are so extensive and for whom the likelihood of committing further crimes is so great that virtually any lengthy sentence within the statutory maximum for the offense of conviction could be deemed appropriate.