# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1079

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Christopher Martin Cole, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 10, 2003

Filed: February 4, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

Christopher Martin Cole appeals the sentence imposed following his guilty plea to transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875. We reverse and remand for resentencing because the district court erred in departing upward from the applicable sentencing range.

## I.    BACKGROUND

On October 16, 2001, Cole called a 911 operator in Paragould, Arkansas, and stated, "Anthrax is in one of your schools now.  Final warning."  Cole was charged with violating 18 U.S.C. § 2332a (Use of certain weapons of mass destruction).

Pursuant to a written plea agreement, Cole pled guilty to transmitting a threat in interstate commerce in violation of 18 U.S.C. § 875.  The plea agreement, while reiterating that the district court was not bound thereby, stipulated that United States Sentencing Guideline (U.S.S.G.) § 2A6.1 (2002) applied, that the base offense level was twelve under U.S.S.G. § 2A6.1(a)(1), that none of the offense characteristics set forth in U.S.S.G. § 2A6.1(b)(1) through (4) were present, and that Cole was entitled to a two-level reduction for acceptance of responsibility.

The United States Probation Office completed a presentence investigation and prepared a Presentence Report (PSR).  The PSR contained various facts about Cole and his offense, only a few of which are relevant here.  First, the PSR stated that police officers were dispatched to the local post office and school to intercept the incoming mail in response to Cole's call.  Second, the PSR identified two factors that justified an upward departure under U.S.S.G. § 5K2.0 because they had not been taken into account by the applicable guideline: (1) the timing of the offense and (2) additional calls made by Cole to 911 shortly before and after October 16, 2001. Cole objected to the second ground and the government introduced no evidence at sentencing to establish that he made any other calls.

Before sentencing, Cole moved for a downward departure and the government moved for an upward departure.   The government reiterated the PSR's recommendations and presented two additional grounds for departure under U.S.S.G. § 5K2.0.  Specifically, it argued that the encouraged factors contained in U.S.S.G. §

-2-

5K2.7 (Disruption of Governmental Function) and U.S.S.G. § 5K2.14 (Public Welfare) justified a departure.

At the sentencing hearing, Cole produced one expert witness in support of his downward-departure motion. This witness testified about Cole's psychiatric condition.[1] During Cole's examination of the witness, the court intervened and asked the witness about Cole's proclivity to make similar threats if not incarcerated. Cole's witness stated he could not reliably answer the question, but "would like to believe that he would not make that same kind of threat again." Sentencing Transcript at 18. The government produced no witnesses.

The district court applied U.S.S.G. § 2A6.1(a) and found Cole's base offense level was twelve. It then decreased the offense level to ten under U.S.S.G. § 3E1.1(a) for Cole's acceptance of responsibility. Next, it determined Cole had zero criminal history points and accordingly calculated Cole's criminal history category as one (I). With these values, the guidelines allowed a period of incarceration from six to twelve months. The district court departed upward from the applicable guideline range and imposed a sentence of twenty-four months followed by supervised release. The nearest offense level that allows such a period of incarceration with a criminal history category of one is level fifteen. Thus, the district court departed upward five levels. The court stated that its decision to depart was warranted by the factors set forth in the PSR and by the government. In addition, the court stated it was concerned about the possibility of future threats and thought a twenty-four month sentence would allow Cole the opportunity to receive residential substance abuse treatment. Sentencing Transcript at 49-50.

---

[1]Cole's argument for downward departure was based upon his low intelligence quotient as found by psychiatric testing—bordering on mental retardation. Cole does not challenge the denial of his motion for a downward departure.

Cole then moved for a sentence correction. In an order denying the motion, the district court stated, "I did not rely upon pending charges, nor upon other threatening phone calls in deciding to depart upward. I departed upward because I think the severity of this particular case and the circumstances existing at the time of the anthrax threat, moved the case outside of the 'heartland' of the applicable guidelines. As a part of this consideration, there was a significant disruption of the school operation, and the anthrax call constituted a significant threat to public health and safety." Cole appeals the district court's upward departure.

## II. DISCUSSION

Under 18 U.S.C. § 3742(e), as amended by the PROTECT Act, "we review de novo the application of the guidelines to the facts and review the district court's factual findings for clear error." United States v. Willey, 350 F.3d 736, 738 (8th Cir. 2003); accord United States v. Gonzalez-Ortega, 346 F.3d 800, 801-02 (8th Cir. 2003). We apply this standard of review even though Cole was sentenced before the amendments took effect. Willey, 350 F.3d at 738-39; Gonzalez-Ortega, 346 F.3d at 802.

Under 18 U.S.C. § 3553(b), a court may depart upward if it "finds that there exists an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration" by the applicable guideline. Section 5K2.0[2] of the guidelines refines this statutorily created authority by allowing departures based on circumstances identified in Chapter Five, Part K, Subpart 2 (i.e., encouraged factors) and unidentified circumstances that may warrant a departure. U.S.S.G. § 5K2.0(a)(2).

---

[2]Section 5K2.0 has been amended since Cole was sentenced. These 2003 amendments did not change the substance of the provision for our purposes, but they did restructure U.S.S.G. § 5K2.0 to a more logical subdivided format. We provide citations here to the 2003 version for the sake of clarity. Where the 2002 version is cited, it is indicated parenthetically.

Additionally, if the guidelines already take a particular circumstance into consideration, the presence of that circumstance "to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense" may justify a departure. U.S.S.G. § 5K2.0(a)(3).

A "'departure must be based on factual findings supported by the record.'" United States v. Bougie, 279 F.3d 648, 650 (8th Cir. 2002) (quoting United States v. Fawbush, 946 F.2d 584, 586 (8th Cir. 1991)). A court may regard as true facts contained in a PSR to which no specific objection is made. Id.; United States v. Munoz, 324 F.3d 987, 992 (8th Cir. 2003).

At sentencing, the district court identified the grounds for departure as both the PSR's recommendations and the grounds presented by the government, as well as the likelihood Cole would reoffend if not incarcerated. However, in its order denying Cole's motion for sentence correction, the district court disavowed any reliance on other bogus 911 calls attributable to Cole—one of the PSR's bases for departure. So there appear to be four grounds the district court relied on in departing: (1) the disruption of governmental functions caused by Cole's call, (2) the significant danger to the public health and safety posed by Cole's call, (3) Cole's recidivistic tendencies, and (4) the timing of the offense. We discuss each in turn.

## A.     Disruption of Governmental Functions

The government argues that U.S.S.G. § 5K2.7 provides a ground for departure. Section 5K2.7 provides that a court may depart upward "[i]f the defendant's conduct resulted in a significant disruption of a governmental function." As mentioned above, U.S.S.G. § 5K2.0 allows departures when such an encouraged factor is present. The PSR stated that, in response to Cole's call, law enforcement officers were dispatched to the local post office and school to intercept incoming mail. Cole made no specific

objection to this fact, so we see no error in the court's apparent conclusion that a governmental function was disrupted.

Evidence concerning the significance of that disruption, however, does not appear in the record. No evidence was presented to the district court indicating the severity of the disruption—e.g., the time officers devoted to intercepting the mail, the quantity of mail intercepted, or the degree of interference with the school's business.

More importantly, the court's reliance on U.S.S.G. § 5K2.7 was misplaced. The departure provisions state that when the disruption of governmental functions is already taken into account by the applicable guideline, a departure is warranted only if "the circumstances are unusual," U.S.S.G. § 5K2.7—if the circumstance is present "to a degree substantially in excess of . . . that which ordinarily is involved" in the offense. U.S.S.G. § 5K2.0(a)(3); accord U.S.S.G. § 5K2.0 ¶ 2 (2002). Here, the specific offense characteristics of U.S.S.G. § 2A6.1 already provide for an increase in the base offense level if governmental functions are substantially disrupted. See U.S.S.G. § 2A6.1(b)(4)(A). Because the district court did not increase Cole's base offense level under this provision, it erred in departing based on U.S.S.G. § 5K2.7. By not increasing the base offense level, the district court implicitly found the governmental functions of the school and mail delivery system were not disrupted to a substantial degree. Thus, *a fortiori*, the disruption was not so unusual as to warrant a departure.

Therefore, we conclude the district court was presented with facts insufficient to warrant a departure under U.S.S.G. § 5K2.7 and erred in departing where the base offense level was left untouched by the disruption of governmental functions.

**B.     Endangerment of Public Health and Safety**

The government also argues that U.S.S.G. § 5K2.14 provides a ground for departure.  Section 5K2.14 states, "If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the offense."  Again, U.S.S.G. § 5K2.0 allows departures when such an encouraged factor is present.  But, the facts appearing in the record do not satisfy U.S.S.G. § 5K2.14.  By all indications Cole's threat was empty.  He did not send anthrax to the school and had no means to carry out his threat.  So Cole's conduct posed no danger to national security, public health, or safety.

Although this circuit has not addressed the application of U.S.S.G. § 5K2.14, cases from other circuits generally support the notion that a real, as opposed to an empty, threat must be present.  See, e.g., United States v. Leahy, 169 F.3d 433, 444 (7th Cir. 1999) (holding defendant's possession of ricin qualified for departure under U.S.S.G. § 5K2.14 given that substance's high toxicity, undetectable nature, incurable effects, and instability).  While Cole's assertion likely caused a significant degree of apprehension amongst law enforcement officers and school personnel (especially in the fall of 2001), apprehension is not the same as significant endangerment.

And, though the response to an empty threat may endanger the public, see United States v. Flinn, 18 F.3d 826, 830 (10th Cir. 1994) (holding U.S.S.G. § 5K2.14 was applicable where "between forty and sixty officers responded to the scene, patrons of [a nearby] restaurant . . . were instructed to lie on the floor to avoid possible gunfire, and there was considerable tension and ammunition at the scene" as a result of the defendant's bogus 911 call reporting a hostage situation), the record contains no facts that substantiate such a conclusion.  Thus, the district erred in relying on U.S.S.G. § 5K2.14.

## C. The Likelihood Cole Would Commit Future Crimes

At the sentencing hearing, the district court voiced its concern about the possibility Cole would make similar threats if not incarcerated for a significant period. The PSR stated that Cole made nineteen bogus calls to 911 between September 11 and October 26, 2001, "which included a bomb threat to the schools, fires, auto accidents, and fights." The district court, however, disclaimed any reliance on other calls Cole made in its subsequent order denying Cole's motion for sentence correction. This was wise given Cole's specific objection to the PSR and the lack of any evidence attributing the other calls to Cole. "If a defendant objects to factual allegations contained in the . . . [PSR], a district court may not adopt the PSR's challenged facts until the defendant's objections have been heard and the government proves by a preponderance of the evidence that the facts stated in the PSR are accurate." United States v. Logan, 54 F.3d 452, 455 (8th Cir. 1995). Without taking into account Cole's repetitive conduct, and thus left with the existence of only the charged offense and a defendant with zero criminal history points, we are hard-pressed to understand how the district court could conclude Cole likely would make more threatening calls. Thus, to the extent Cole's purported recidivistic tendencies were taken into account at sentencing, the district court erred.

## D. Timing of the Offense

The PSR identified the timing of the offense as a ground for departure under U.S.S.G. § 5K2.0. Specifically, it stated, "the timing of the instant offense caused greater concern and heightened investigative effort as law enforcement agencies were particularly sensitive to threats due to the September 11, 2001, terrorist attacks, and due to the numerous investigations being made regarding anthrax deaths. In addition, the threats made to Paragould schools located in Greene County, Arkansas, were significantly threatening in light of the Westside School shootings which occurred on March 24, 1998, in Jonesboro, Arkansas, a neighboring county." The PSR

recommended a departure on this ground because the applicable guidelines did not account for these circumstances.

It is not clear from the record how these circumstances affected the district court's reasoning. On the one hand, as an unmentioned factor, a departure may have been warranted under U.S.S.G. § 5K2.0(a)(2)(B). Accord U.S.S.G. § 5K2.0 ¶ 1 (2002). The district court could have concluded that Cole chose the substance of his threat because of the particular fear it would engender. The increased sense of alarm caused by Cole's choice may have justified a departure. On the other hand, the district court may have merely rolled this fact into its determination that U.S.S.G. §§ 5K2.7 and 5K2.14 warranted an upward departure under U.S.S.G. § 5K2.0. The understandably increased sense of alarm may have contributed to a response by law enforcement that itself endangered the safety of the public or it may have aggravated the disruption to governmental services the call caused. See United States v. Harrell, 207 F. Supp. 2d 158, 169-70 (S.D.N.Y 2002) (evaluating a prank terrorist threat, discussing cases in which such threats have warranted a departure under U.S.S.G. § 5K2.7, and cogently considering the concerns involved in such cases in the post-September 11 atmosphere).

Given the flaws discussed above in the application of U.S.S.G. §§ 5K2.7 and 5K2.14, we cannot conclude either section justified the upward departure, even in light of the timing of the offense. Also, we cannot affirm simply because this circumstance may have justified some degree of departure as an unmentioned factor. As explained above, the district court improperly considered three grounds for the departure, and we do not know the relative weight the court gave this factor. In fact, we do not even know what role this factor played in the court's decision. We therefore remand for resentencing so the district court can address the matter in the first instance.

## III.    CONCLUSION

Accordingly, we set aside the sentence and remand for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(A).  The district court is free to consider the issues of an increase in the base offense level under U.S.S.G. § 2A6.1(b)(4)(A) and upward departure in light of our decision, conducting whatever further factfinding it deems appropriate.

We note that 18 U.S.C. §§ 3553(c) and 3742(g) now apply to the district court. Section 3553(c), as amended by the PROTECT Act in April 2003, requires the district court to include in its written order of judgment the specific reasons for a departure. In turn, section 3742(g)(2) restricts the district court's authority on remand by allowing departures only upon a ground identified in the prior section 3553(c) written statement.  However, we hold section 3742(g)(2) does not require the district court to impose a sentence limited only to the grounds identified in a prior section 3553(c) written statement because the court was not required to make the section 3553(c) written statement in December 2002 when it sentenced Cole, see United States v. Aguilar-Lopez, 329 F.3d 960, 963 (8th Cir. 2003).  Thus, the issue of upward departure is open on remand, subject to what we have said here.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree we should reverse the district court, vacate Cole's sentence, and remand for resentencing. I differ, however, over the majority's implicit conclusion an upward departure may appropriately be based on the fact Cole issued his empty threat when the public was especially sensitive.

I would hold the district court erred in departing upward based on the timing of Cole's threat.  As the majority acknowledges, there is no evidence to suggest law enforcement responded in a way to endanger public safety or disrupt public services.

Nor is there evidence Cole sought to engender broad alarm in the public by threatening the spread of anthrax. On the contrary, the district court adopted the Presentence Investigation Report, which document indicates Cole sought to scare only his wife. The only feature of this case to distinguish it from the run-of-the mill threat conviction is the fact the public was particularly susceptible to fear at the time. In my view, unfocused public fear standing alone does not warrant a departure under the Guidelines.

I also strongly disagree with the majority's suggestion the district court may take more evidence to support factfinding which would in turn warrant a departure. The government failed to present such evidence at the original sentencing despite having every opportunity to do so. I see no reason to provide a second opportunity to produce it now as Cole has spent more than a year in prison, some of that time seemingly contrary to law.

I note finally the district court is encouraged to give consideration to a motion for release pending resentencing under Rule 46(c) and 18 U.S.C. § 3143(a). It appears from the record Cole has served 20 months in prison on this and related state charges.[3] The sentencing range for Cole's crime of conviction is 6 to 12 months. It is not clear from the record whether any of this time is attributable to an actual state conviction. If it is not, or if the sentences properly are served concurrently, it seems likely Cole will already have completed any sentence the district court may impose on remand.

_____

_____

[3]Cole was first arrested on November 2, 2001, and released pending trial on March 8, 2002. State authorities arrested him again on September 10, 2002. He remained incarcerated, according to the Presentence Investigation Report, at the time of his sentencing.

-11-