# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1543

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Bart Edward Underwood, | * |
| | * |
| Defendant - Appellant. | * |
| | * |
| | * |
| | * |
| _____ | * Appeals from the United States |
| | * District Court for the Southern |
| Nos. 03-2716/2901 | * District of Iowa. |
| _____ | * |
| | * |
| United States of America, | * |
| | * |
| Plaintiff - Appellee/ | * |
| Cross-Appellant, | * |
| | * |
| v. | * |
| | * |
| Gayle Jean Steele, also known as | * |
| Gayle Jean Gosnell, | * |
| | * |
| Defendant - Appellant/ | * |
| Cross-Appellee. | * |
| | * |
| | * |
| | * |

No. 03-1982

United States of America,

        Plaintiff - Appellee,

v.

Duane Carl Carpenter,

        Defendant - Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Submitted: March 8, 2004

Filed:  April 22, 2004

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

MURPHY, Circuit Judge.

Bart Underwood, Gayle Steele, and Duane Carpenter were each convicted of conspiracy to manufacture methamphetamine.  Carpenter was also convicted of manufacturing methamphetamine, endangering human life during the manufacture of methamphetamine, manufacturing methamphetamine within 1000 feet of a school, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, and possession of an unregistered short barreled shotgun.  The

2

district court[1] sentenced Underwood to 140 months, Steele to 262 months, and Carpenter to life plus ten years. Underwood, Steele, and Carpenter appeal their convictions. Steele and Carpenter also raise sentencing issues, and the United States cross appeals the court's decision not to enhance Steele's sentence for endangering human life. After studying the extensive record, we affirm the judgments of the district court except for one of Carpenter's convictions which must be vacated because of a double jeopardy issue.

I.

Bart Underwood, his girlfriend Gayle Steele, her brother Duane Carpenter, and several others manufactured methamphetamine at Carpenter's residence in Council Bluffs, Iowa. By August 2001, there were at least two to three one ounce methamphetamine cooks a week at Carpenter's house. The cooks continued until the defendants were apprehended by law enforcement in late November 2001. Carpenter would exchange methamphetamine for precursor materials and equipment to use in the cooks. He directed most of the cooks at the residence and possessed two firearms, one that he carried while supervising the cooks and a sawed off shotgun that he kept in the house to protect his methamphetamine operation. Steele and Underwood frequented the house and regularly participated in the cooks by peeling lithium batteries, popping pseudoephedrine pills from blister packages and crushing them, and "bubbling" the methamphetamine during the final stages of production. They also obtained chemicals and supplies for Carpenter's cooks and for their own. With the assistance of Underwood, Steele occasionally conducted her own cooks using Carpenter's equipment and then shared her batch with Carpenter.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

3

On November 27, 2001 law enforcement agents searched Carpenter's residence pursuant to a warrant and uncovered the active methamphetamine lab on the second floor. They also discovered methamphetamine production byproducts, precursor chemicals, and equipment used to manufacture methamphetamine scattered throughout the house. This included pseudoephedrine, sulfuric acid, starter fluid, waste sludge materials containing anhydrous ammonia, and lithium. A single kerosene heater with an open heating element sat in the second floor foyer as the sole source of heat for the entire house; it was plugged into an extension cord running from the house next door. Because chemical fumes pervaded the house, the police ran a safety assessment and identified several potential hazards. There were apparent dangers at the site presented by exposure to chemicals, the mixing of dangerous chemicals such as hydrogen chloride gas and flammable fuel vapors, numerous potential sources of open flames, and three large dogs running loose in the house.

Six people were apprehended in the house during the search. Steele and Underwood were in a second floor bedroom, where waste from methamphetamine cooks was found on a TV tray near the bed, including jars with residue, used coffee filters, and salt. Christy O'Neal and Twyla Pike were found in another second floor room, and Franklin Freese was in the attic. After a second sweep of the house, the police discovered Carpenter in the attic with a loaded, unregistered short barrel shotgun.

A grand jury indicted Carpenter, Steele, Underwood, and O'Neal for conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846, and for manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Carpenter was also indicted for felon in possession, possession of a firearm in furtherance of a drug trafficking crime, and possession of a short barreled shotgun, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1), 924(c)(1)(A), and 26 U.S.C. § 5861(d). A superceding indictment later added charges against each defendant for manufacturing

4

drugs within 1000 feet of a school, and for endangering human life, in violation of 21 U.S.C. §§ 860 and 858.

Defendants filed several pretrial motions, including motions to suppress the evidence found in the November search and for a <u>Franks</u> hearing. Their motions were denied after a hearing.[2] The court found that the defendants had not made a substantial preliminary showing that the warrant affidavit contained false statements made knowingly or intentionally or with reckless disregard for the truth. The court also concluded that the warrant affidavit sufficiently showed probable cause because it was based on information from a reliable informant and his tip was corroborated.

The trial of Carpenter, Steele, Underwood, and Freese began on September 20, 2002. Freese entered a guilty plea after four days. O'Neal had entered into a plea agreement before trial and testified against the remaining defendants. The jury returned guilty verdicts on October 8 against Steele, Underwood, and Carpenter for conspiracy to manufacture methamphetamine, and it found each responsible for 500 grams or more of a mixture or substance containing methamphetamine. The jury also convicted Carpenter of manufacturing methamphetamine, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, possession of an unregistered short barreled shotgun, endangering human life during the manufacture of methamphetamine, and manufacturing methamphetamine within 1000 feet of a school. Underwood and Steele were found not guilty of manufacturing methamphetamine, endangering human life during the manufacture of methamphetamine, and manufacturing methamphetamine within 1000 feet of a school. The district court denied defendants' motions for a new trial or judgments of acquittal, and each defendant was sentenced in a separate proceeding.

---

[2]The defendants also moved for dismissal, for election of counts, and for the court to rule in limine on evidentiary issues regarding expert testimony, Fed. R. Evid. 404(b), and prior convictions.

Underwood was sentenced to 140 months, and appeals his conviction. On his appeal, he challenges the denial of his motion to suppress, sufficiency of the trial evidence, denial of his posttrial motion for a new trial, and denial of requested jury instructions.

Steele was sentenced to 262 months. At her sentencing hearing, the district court denied her motions to compel the government to credit her substantial assistance and for a mitigating role reduction. Because the court found her criminal history category of III understated her prior offense conduct, it departed upward to category IV.[3] The district court applied an enhancement for firearm possession which raised Steele's base offense level from 34 to 36, but it declined to apply an enhancement for endangering human life. On her appeal, Steele contests the denial of her suppression motion, the denial of a minor role adjustment, the enhancement for firearm possession, and the increase in her criminal history category. The government cross appeals, arguing that the district court should have applied a sentencing enhancement to increase Steele's offense level for endangering human life.[4]

Carpenter was sentenced to life imprisonment for his convictions of conspiracy, manufacturing, felon in possession, and manufacturing within 1000 feet of a school; concurrent sentences of ten years for possession of a short barreled shotgun and endangering human life; and a consecutive term of ten years for possession of a

---

[3]Steele's criminal history had been calculated at III by the probation officer who assigned five criminal history points to her: three for two counts of second degree murder and two for forgery.

[4]Steele and Underwood had both been indicted for endangering human life during the manufacturing of methamphetamine. The jury found them not guilty of the charge, and the district court declined to apply a sentencing enhancement to either for endangering human life. Although the government states it planned to appeal in both cases, it only met the filing deadline in Steele's case.

firearm in furtherance of a drug trafficking crime. He received enhancements for his role as a leader in the conspiracy and for endangering human life, and he was categorized as a career offender. He unsuccessfully sought a downward departure for overstatement of his criminal history. On his appeal, Carpenter challenges the denial of his suppression motion, the sufficiency of the evidence, and the constitutionality of the endangerment statute. He also raises a double jeopardy issue based on his convictions for manufacturing, manufacturing within 1000 feet of a school, and endangering human life. As to his sentence, he appeals the leadership role enhancement, the findings of drug quantity, and his designation as a career offender.

II.

A.

Defendants claim that their Fourth Amendment rights were violated by a search under an invalid warrant. They contend that the district court erred by not suppressing the evidence from the November search because no probable cause existed for the search warrant since it was based on information from an unreliable informant and a law enforcement official who misrepresented the underlying facts in violation of Franks v. Delaware, 438 U.S. 154 (1978). The denial of a motion to suppress is reviewed de novo with the underlying factual determinations reviewed for clear error. United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003).

A search warrant is valid under the Fourth Amendment if it establishes probable cause. Probable cause exists, if under the totality of the circumstances, a showing of facts can be made "'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (citing United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000)). Information from an informant may be sufficient to establish probable cause

"if the tip 'is corroborated by independent evidence.'" <u>Id.</u> at 883 (citing <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993)).

Defendants assert that the search warrant did not support probable cause because the affiant had relied on a confidential informant who was not credible and on the fruits of a previous search later invalidated by a state court. They argue that the informant was unreliable because he offered information only to decrease his own culpability. We have recognized that informants are often motivated "in the hopes of obtaining leniency with respect to their own situation [but] that does not necessarily mean they are unreliable." <u>Id.</u> at 884. Here, the agent could assess the informant's credibility because the information was provided in person. <u>See</u> <u>id.</u> at 883. The agent also corroborated the tip through his own investigation, which confirmed the location of the house and verified the name and address provided by the informant. <u>See</u> <u>United States v. Williams</u>, 10 F.3d 590, 594 (8th Cir. 1993). The officer had also previously received tips from the police hotline and others about drug related activities at the address. The district court did not err in denying the motion to suppress because probable cause was shown by corroborated information from a reliable informant.

Defendants also argue that the agent relied on the fruits of a previous illegal search of Carpenter near Henderson, Iowa in September 2001. During the earlier search, police found a .22 caliber pistol on Carpenter, as well as precursor materials – pseudoephedrine and lithium batteries. Even without the fruits of this search, probable cause existed to issue the warrant because the application relied on a number of other sources, including the informant's tips, their corroboration, and the hotline reports.

Defendants contend that the district court erred in denying their motion for a <u>Franks</u> hearing and that the evidence should have been suppressed because the agent violated <u>Franks</u> in obtaining the warrant. They claim that the agent actively

misrepresented his investigations, affirmatively indicated that the informant had previously given reliable information when he had not, and omitted mentioning that the earlier search of Carpenter had been suppressed in state court.  We review the denial of a request for a Franks hearing for abuse of discretion.  Gabrio, 295 F.3d at 882.

A defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was included in the warrant affidavit either intentionally or with reckless disregard for the truth and the information was necessary to the finding of probable cause.  United States v. Fairchild, 122 F.3d 605, 610 (8th Cir. 1997).  Since the defendants did not make a substantial preliminary showing that a Franks violation had occurred, the district court did not abuse its discretion by denying their motion for a Franks hearing.

To prevail on a Franks challenge to a warrant, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement or omitted a truthful statement from his warrant affidavit.  Coleman, 349 F.3d at 1083.  "Mere negligence on the part of law enforcement officers" does not satisfy this initial requirement.  United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997).  Second, a defendant must show that if the offensive content in the warrant affidavit is ignored, its remaining content "would be insufficient to establish probable cause."  Coleman, 349 F.3d at 1083.

Defendants cannot meet the first Franks requirement because they rely entirely on their own accusations that the agent acted deliberately or recklessly.  They point to several minor discrepancies in the warrant affidavit, such as the listing of a different address for Carpenter in a prior police report, but these minor differences do not show deliberate or reckless falsehood.  Id. at 1084.  Stating that an informant has not given false information even though he has never given information in the past does not amount to a false or reckless omission of relevant information.  Gibson, 123

9

F.3d at 1124. Defendants also charge that the agent falsely or recklessly omitted information that the fruits of the earlier search had been suppressed by a state court. While the agent did omit this information, the defendants have not demonstrated that this was intentional rather than negligent. Id. at 1084-85. Thus, they have not shown that the agent acted deliberately or recklessly in preparing the warrant application. Even if the defendants could meet the first requirement, it would not undermine the probable cause underlying the warrant, which was based on several untainted sources of information. Because probable cause existed for the warrant and the defendants have not shown a Franks violation, the district court did not err in denying the suppression motion.

B.

Underwood and Carpenter assert that their convictions are not supported by the evidence. Underwood challenges his conspiracy conviction and the attribution of 500 grams of methamphetamine to him because these findings were based solely on the testimony of two witnesses. He contends that the government needs to corroborate such testimony.[5] Similarly, Carpenter challenges his convictions for conspiracy, manufacturing within 1000 feet of a school, and endangerment to human life because of alleged deficiencies in the testimony of witnesses. He argues that the testimony of the government's cooperating witnesses is unbelievable on its face.

---

[5]Underwood also argues that his motion for a new trial was improperly denied by the district court for a similar reason and that the government's reliance on unreliable witnesses warrants a new trial in the interests of justice. The district court's denial of a new trial motion is reviewed for abuse of discretion. See United States v. Munoz, 324 F.3d 987, 991 (8th Cir. 2003) (holding that a new trial should be granted "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred"). We cannot say that the district court abused its discretion in denying Underwood's motion.

Sufficiency of the evidence to support a jury verdict is reviewed de novo. United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000). The facts are viewed in the light most favorable to support the verdict, all reasonable inferences are accepted, and reversal is only appropriate if no reasonable jury could have found the defendant guilty. United States v. Stroh, 176 F.3d 439, 440 (8th Cir. 1999). While corroborating evidence can support the testimony of witnesses, the cases relied on by the defendants, see, e.g., United States v . Hulse, 198 F.3d. 665, 668 (8th Cir. 1999); United States v. Del Toro-Aguilera, 138 F.3d 340, 342 (8th Cir. 1998), do not hold that witness testimony must be corroborated. Rather, the credibility of witnesses is for the jury to evaluate. See, e.g., United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003); United States v. Mangine, 302 F.3d 819, 823 (8th Cir. 2002). Because Underwood and Carpenter base their challenge to the sufficiency of the evidence solely on witness credibility, they cannot prevail.

C.

Carpenter challenges his conviction for endangering human life during the manufacture of methamphetamine on the basis that 21 U.S.C. § 858 is unconstitutionally vague. He contends the words "harm to human life" do not place a defendant on notice as to the conduct prohibited and can lead to arbitrary enforcement. We review a challenge to a criminal statute's constitutionality de novo. United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002). A criminal statute is vague if persons of a "'common intelligence must necessarily guess at its meaning and differ as to its application.'" United States v. Smith, 171 F.3d 617, 622-23 (8th Cir. 1999) (citing Planned Parenthood of Minn. v. Minnesota, 910 F.2d 479, 482 (8th Cir. 1990)). A statute gives fair warning if either on its face, or as construed, it made reasonably clear at the relevant time that the defendant's conduct was criminal. United States v. Lanier, 520 U.S. 259, 267 (1997).

11

Here, Carpenter had adequate notice that his conduct was proscribed, and his arrest and conviction were not arbitrary. While Carpenter argues that he had no actual notice that he could be charged for endangerment to human life, actual notice is not required. See United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002). The plain reading of the statute indicates that Carpenter's activities fell within it. A common interpretation of the words "substantial risk of harm to human life" suggests not mental, emotional, or spiritual harm as Carpenter argues, but rather that the activity engaged in increases the likelihood of imminent physical danger to humans. The district court correctly used the plain meaning of the statutory language in its jury instructions. The jury instructions defined the risk as originating from either the process of manufacturing methamphetamine or the storage, transportation, or mixing of chemicals used in methamphetamine production. The court's instructions limited the risk to one that was real and significantly large, that created a potential for current physical damage, and that endangered a person other than the defendant. Similar jury instructions have been held constitutional. See, e.g., United States v. Evans, 318 F.3d 1011, 1016 (10th Cir. 2003); United States v. Jackson, 199 F. Supp. 2d 1081, 1087-88 (D. Kan. 2002). The district court did not clearly err or abuse its discretion in instructing the jury, and the statute as construed and applied to Carpenter is not unconstitutionally vague.[6]

---

[6]Carpenter also challenges his convictions for endangerment and manufacturing near a school on the grounds that the district court improperly allowed the expert testimony of Special Agent Michael Mittan and Melvin Samples, a surveyor with HGM Associates, Inc., who testified that Carpenter's house was within 1000 feet of a school. To prevail on this claim, Carpenter has to show not only that a discovery rule was violated but also that the violation was prejudicial. United States v. Kuenstler, 325 F.3d 1015, 1023 (8th Cir. 2003). Carpenter has not established any prejudice.

12

D.

Underwood claims that the district court erred by failing to instruct the jury on multiple conspiracies. The denial of a request for a jury instruction is reviewed for abuse of discretion. United States v. Gary, 341 F.3d 829, 834 (8th Cir. 2003).

Underwood contends that the district court abused its discretion in instructing the jury. He claims that there were two different conspiracies: the one charged in the indictment and a separate conspiracy between Underwood and Steele in which methamphetamine was manufactured only to support Steele's drug habit. He argues that the jury could have convicted him of a conspiracy with Steele rather than the larger conspiracy charged in the indictment. He contends both conspiracies were proven at trial and that the court should have given his requested instruction on multiple conspiracies.

A single conspiracy may be proven where the defendants have a common purpose and mutual assistance is provided by the members of the conspiracy. United States v. Haren, 952 F.3d 190, 196 (8th Cir. 1992). In this case, there was sufficient evidence to prove that Underwood knowingly and willingly gave mutual assistance to the conspiracy charged in the indictment. Underwood knew his coconspirators, stayed overnight at Carpenter's residence on several occasions, and participated in the methamphetamine cooks by popping pseudoephedrine pills out of the packages, crushing the pills, and peeling lithium batteries. The jury instructions given in this case left open the possibility that the jury could find that Underwood was not a member of the indicted conspiracy, see United States v. Hester, 140 F.3d 753, 757 (8th Cir. 1998), but the jury did not make such a finding. Given the record at trial, the district court did not abuse its discretion in refusing to give Underwood's proposed jury instruction.

13

E.

Carpenter argues that his Fifth Amendment rights were violated when he was tried and convicted on multiple counts for the same conduct. Multiplicity in charging an offense is reviewed de novo. United States v. Okolie, 3 F.3d 287, 289 (8th Cir. 1993). Under the Fifth Amendment, a defendant is protected from being subject to double jeopardy. Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003). Where each offense requires proof of a different element, there is not a double jeopardy problem. See Blockburger v. United States, 284 U.S. 299, 304 (1932) (holding that convictions for separate counts arising out of the same narcotics sale did not constitute double jeopardy because each count required proof of an additional fact that the other did not). Carpenter argues that he cannot be convicted for manufacturing methamphetamine, manufacturing within 1000 feet of a school, and endangering life during the manufacture of methamphetamine because the manufacturing count is a lesser included offense of either the endangerment count or the school proximity count.

As the government conceded at oral argument, convictions under both 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860 violate the double jeopardy clause because one of the elements of § 860 is a violation of § 841(a)(1).[7] See 21 U.S.C. § 860 (West

---

[7]21 U.S.C. § 860 states:

> Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as

14

2004); United States v. Freyre-Lazaro, 3 F.3d 1496, 1507 (8th Cir. 1993). A violation of 21 U.S.C. § 841 is a lesser included offense of 21 U.S.C. § 860. Id. While a defendant may be tried for lesser and greater offenses during the same trial, a judgment of conviction and punishment for both violates the double jeopardy clause. United States v. Jelinek, 57 F.3d 655, 660 (8th Cir. 1995). Because Carpenter was convicted and sentenced on both counts, we must remand so the district court can vacate both Carpenter's judgment of conviction and his sentence for the lesser offense of manufacturing methamphetamine in violation of 21 U.S.C. § 841.[8] Id.

## F.

Steele and Carpenter each argue that the district court erred in sentencing in respect to their roles in the offense. A district court's determination of a defendant's role in the offense is reviewed for clear error. United States v. Bush, 352 F.3d 1177, 1181 (8th Cir. 2003).

---

provided in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense.

[8]At sentencing, the district court recognized that there could be a double jeopardy challenge on appeal in respect to Carpenter's § 841 and § 860 convictions, and it determined that the manufacturing conviction did not materially affect his life sentence imposed for conspiracy, felon in possession, and manufacturing within 1000 feet of a school. The court stated explicitly that vacation of the manufacturing conviction would not affect Carpenter's sentence on the other counts of conviction.

Steele argues that she should have received a downward adjustment under § 3B1.2b for a minor role in the conspiracy. She points out that she was not named in the search warrant, decontaminated after the search, implicated as a major player in the trial testimony, or found with any drugs.[9]

A two level reduction for minor participation applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." United States Sentencing Guidelines Manual § 3B1.2(b) cmt. 5 (2003) [USSG]. To prevail on her argument, Steele must demonstrate that she participated less than others in the conspiracy. Bush, 352 F.3d at 1182. Here, the evidence showed that Steele was deeply involved in the conspiracy and did not participate less than most of the others. She was aware of the extent of the operation because she frequented her brother's house where she stayed overnight on several occasions. She not only participated in the methamphetamine cooks, but she operated her own. The district court did not err in finding Steele not eligible for a minor participant adjustment.

Carpenter challenges the district court's enhancement of his sentence under USSG § 3B1.1 for being an organizer or leader in the conspiracy. He alleges that he did not manage anyone and that other individuals simply used the methamphetamine lab for their own cooks. Under § 3B1.1, a defendant's offense level can be increased by four levels if he was an organizer or leader of a criminal activity involving five or more participants. A defendant who did not directly control the other conspirators may still receive an enhancement for being a leader or organizer. United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995). Here, the district court applied the enhancement based on all the evidence, including the number of people involved in the conspiracy, the activity that took place in Carpenter's house, evidence that

---

[9]Steele also argues that her Eighth Amendment rights have been violated, but she made an insufficient showing to merit discussion of this claim.

16

Carpenter directed the cooks and directed others to get precursors or bury sludge in the backyard. The district court did not err by finding Carpenter was a leader in the conspiracy.

G.

Carpenter raises two additional sentencing issues: that the district court erred in its calculation of drug quantity and erred by treating him as a career offender.

According to Carpenter, the district court erred in calculating the drug quantity by overestimating the efficiency of the methamphetamine laboratory and the quantity of the precursor materials used. He contends that his cooks only produced a yield of 15% from the precursor materials, rather than the 30% yield found by the district court. The correct efficiency finding would have lowered the drug quantity he says and would have resulted in a 2 level reduction in his base offense level. A district court's findings of fact regarding the quantity of drugs attributed to the defendant is reviewed for clear error. United States v. Maggard, 156 F.3d 843, 848 (8th Cir. 1998). District courts determine the drug quantity attributable to the defendant by a preponderance of the evidence and make credibility decisions in the process. United States v. Johnston, 353 F.3d 617, 625 (8th Cir. 2003) (per curiam). The district court heard the evidence and found the drug quantities had been proven by a preponderance of evidence. Its reliance on trial testimony and the jury's credibility findings in its determination of drug quantity was not clear error.

Finally, Carpenter contends that he is not a career offender under USSG § 4B1.1 because his Iowa conviction for "going armed with intent" is not a crime of violence. Under § 4B1.1, a defendant is a career offender if "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1. We have already determined that

an Iowa conviction for going armed with intent qualifies as a crime of violence for sentencing purposes and can be used in determining whether a defendant is a career offender. See United States v. Gomez-Hernandez, 300 F.3d 974, 980 (8th Cir. 2002). Because Carpenter's Iowa conviction was for a crime of violence, the court did not error in finding him a career offender for sentencing purposes.

H.

Steele challenges her sentence on several grounds. First, she argues that the district court erred by applying a two level enhancement for possession of a dangerous weapon under USSG § 2D1.1(b)(1) because the evidence did not show a sufficient nexus between the firearm and the conspiracy or that she had constructive possession of the firearm. We review de novo a district court's application of the guidelines to the facts and its findings for clear error. United States v. Willey, 350 F.3d 736, 739 (2003). Section 2D1.1(b)(1) provides for a two level increase in the offense level for possession of a dangerous weapon. This adjustment is to be applied "unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 at cmt. n.3.

The district court did not err in applying the enhancement to Steele because the government demonstrated by a preponderance of evidence that it was reasonably foreseeable that the firearm would be used in the course of the conspiracy and that Steele constructively possessed the firearm. At the sentencing hearing, Freese testified that he had seen a gun at Steele's house and that Carpenter would go there to bubble methamphetamine. While Steele argued that the gun in her home was for her personal protection, it was nevertheless foreseeable that it could be used in relation to the drug manufacturing in which the conspirators were involved. From the evidence presented, it is not clearly improbable that the weapon was connected with her offense.

Second, Steele argues that the district court improperly departed upward to increase her criminal history category. A district court's sentencing departure is reviewed de novo, and its factual findings for clear error. Willey, 350 F.3d at 739. An upward departure based on criminal history may be warranted "if reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3. The district court found that criminal history category III substantially underrepresented the seriousness of Steele's criminal history. Steele has been a recidivist criminal since 1978 and had several juvenile adjudications for which she had not received any criminal history points, but which can be considered as a basis for departure under USSG § 4A1.2. The district court could have increased her criminal history level based on her juvenile adjudications alone, and it was also entitled to consider the nature of her adult convictions which included two convictions for second degree murder. The district court did not err by its upward departure.

The government cross appeals Steele's sentence, arguing that the district court should have enhanced Steele's offense level under USSG § 2D1.1(b)(5)(B) because the methamphetamine lab in Carpenter's house created a substantial risk to human life. It contends that Steele should have received an enhancement because the methamphetamine lab was in a house in an urban residential neighborhood, the defendants stored noxious chemicals haphazardly, and the evident risk of harm to human life in these circumstances was reasonably foreseeable to Steele.

We review de novo a district court's application of the guidelines to the facts and its findings for clear error. Willey, 350 F.3d at 739. Under USSG § 2D1.1(b)(5)(B), a sentence is to be enhanced by three levels if the defendant was engaged in the manufacture of methamphetamine and created a substantial risk of harm to human life. Under a reasonable doubt standard the jury had found Steele not

guilty of endangering human life, but the standard of proof for application of a sentencing enhancement is preponderance of the evidence.

The district court found the enhancement was not appropriate in Steele's case after considering the arguments presented. The guidelines suggest consideration of several factors in deciding whether to apply the enhancement: (1) quantity of chemicals found and the manner of their storage; (2) disposal of the hazardous chemicals; (3) duration and extent of the manufacturing operation; and (4) location of the laboratory. The record shows that the methamphetamine lab was in Carpenter's house, but is not clear how regularly Steele was there or if she was familiar with all of the conditions in the house. There was also evidence that the most dangerous part of the methamphetamine production – the mixing of anhydrous ammonia with lithium strips – was done by Carpenter away from the house in public places and without Steele's presence or assistance. Finally, we recognize that the district court heard all the testimony at trial and made its finding based on its opportunity to assess the testimony given in front of it. We conclude that it did not err by its decision not to apply the enhancement to Steele.

III.

For the foregoing reasons, we affirm the convictions of Carpenter, Steele, and Underwood for conspiracy to manufacture methamphetamine; as well as Carpenter's convictions for manufacturing methamphetamine within 1000 feet of a school, endangering human life during the manufacture of methamphetamine, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, and possession of an unregistered short barreled shotgun. We affirm the sentence imposed on Steele and deny the government's cross appeal.

We remand Carpenter's conviction for manufacturing methamphetamine in violation of 21 U.S.C. § 841, for the district court to vacate it on double jeopardy

grounds as a lesser included offense of 21 U.S.C. § 860.  We affirm Carpenter's sentence except for the sentence imposed for manufacturing methamphetamine which should be excised from the judgment on remand.

Except for the remanded count, we affirm the judgment of the district court.

_____