# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————————

No. 99-4213

————————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Riccy Wells, | * | |
| | * | |
| Appellee. | * | |

————————————

Submitted: May 11, 2000
Filed: August 18, 2000

————————————

Before RICHARD S. ARNOLD, HANSEN, and BYE, Circuit Judges.

————————————

HANSEN, Circuit Judge.

The United States government brings this interlocutory appeal challenging the order of the district court[1] granting Riccy Wells' motion to suppress evidence seized during the search of a duplex.   We affirm.

———————————

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

I.

During the execution of a state search warrant at 1007 North Fulbright in Springfield, Missouri, officers seized firearms that became the basis of a four-count federal indictment against Riccy Wells. The superseding indictment charges Wells with possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2); possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and possession of unlawful firearms while being an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Wells filed a motion to suppress evidence[2] on the ground that the search warrant was procured in violation of Franks v. Delaware, 438 U.S. 154 (1978).

In relevant part, the affidavit in support of the search warrant states a belief that evidence relating to the crimes of first degree assault, unlawful use of a weapon, and armed criminal action would be found at 1007 North Fulbright in Springfield, Missouri. The affiant, Officer Darren Lane, stated that his division was assigned to investigate criminal street gangs, and in his experience, gang members often have access to firearms and ammunition that they use during the commission of crimes and trade among themselves.

The affidavit refers to three drive-by shootings. First, two vehicles had reportedly exchanged gunfire in the Big K superstore parking lot on February 26, 1999. A confidential informant reported that one of the vehicles (a white Oldsmobile convertible) had been driven by Zachary Wilson. Another informant reported that the other vehicle (a brown Chevrolet Suburban) was owned by Jerry and Mose Johnson.

_____

[2]Wells also filed a motion to suppress statements he made during a police interview and another motion to suppress evidence. The district court's rulings regarding these motions are not at issue in this appeal.

2

The second drive-by shooting occurred on March 20, 1999, near the home of Jerry and Mose Johnson. A witness reported seeing "a dark-colored vehicle" leaving the area with its headlights off. (Appellant's Add. at 6.) One hour later, on March 21, 1999, a third drive-by shooting occurred at another location. The affidavit states that a witness reported shots had been fired from a "'dark colored Lincoln' type vehicle." (Id.)

The affidavit asserted that two days later, the police department's crimestoppers hotline received two anonymous calls dealing with the shootings. The first, "a concerned citizen who wished to remain anonymous and confidential for his/her safety," stated that he or she "had received information that" Riccy Wells, Zachary Wilson (known to the confidential informant as "Hennesse"), and "Joey" were responsible for the shootings. (Id.) The informant also stated that the vehicle and weapons used in the drive-by shootings were being kept hidden in the garage at 1007 North Fulbright, which was a duplex rented by Wells' girlfriend, "Misty." (Id.)

A second anonymous call came in "almost immediately" after the first call. (Id.) This anonymous caller stated that he or she had heard Zachary Wilson and Jose Rincon, known as "Joey," bragging about committing the recent shootings. Officer Lane also stated in the affidavit that an anonymous high school student had told him that he or she had heard that either Zachary Wilson or an associate of his had committed two of the drive-by shootings. (See id. at 7.)

Officer Lane stated that he corroborated through city utilities records that the account for 1007 North Fulbright was in the name of Misty Hardin. Springfield police department crimestoppers' records revealed that Misty and Wells were girlfriend and boyfriend. Police investigative files also note an association between Wells (an alleged member of the Gangster Disciples street gang), Zachary Wilson (allegedly involved in a narcotics distribution ring), and Jose Rincon (allegedly a member of the Mexican Mafia).

3

Finally, the affidavit states that when Officer Lane drove by the duplex at 1007 North Fulbright, he observed Wells washing a dark blue 1988 Buick Park Avenue automobile. In the affidavit, Officer Lane stated, "This vehicle matches the description given to us as the possible suspect vehicle in the above listed shootings." (Appellant's Add. at 8.) Lane also stated that in his experience, gang members often register their vehicles in the name of friends or family members. The 1988 Buick Park Avenue was registered to Dominic Stevens, who lived at an address that Zachary Wilson had once listed as his home address. Based on all of this information, Officer Lane applied for and received a state court-issued search warrant for 1007 North Fulbright, where the weapons were found that formed the basis for the federal indictment against Riccy Wells.

At the hearing on Wells' motion to suppress the evidence, Officer Lane testified, and the underlying police report demonstrates, that the witness to the March 21 shooting provided a detailed vehicle description of a new Lincoln, either dark green or black, with tint on all windows. (See Hearing Tr. at 29-30; Appellee's Add. at 2.) Officer Lane acknowledged that his description of the witness having reported seeing a "'dark colored Lincoln' type vehicle" was a poor choice of words that greatly expanded what the witness really said as recited in the police report. The district court adopted the magistrate judge's report and recommendation, finding that the affidavit's description of the vehicle was central to the conclusion that the vehicle seen at 1007 North Fulbright matched that description, and that the misstatement or omission misled the judge who issued the warrant. The court further found that a properly reconstructed warrant lacked sufficient information to support a finding of probable cause that evidence of the shootings would be found at 1007 North Fulbright. The district court concluded Wells had established a Franks violation, and the district court granted Wells' motion to suppress the evidence found in the search of the duplex.

The government appeals, asserting that the search warrant affidavit supports a finding of probable cause, even absent the alleged misstatements and omissions.

4

## II.

On appeal of the grant or denial of a motion to suppress, we review the district court's historical factual findings for clear error and its conclusions of law on the probable cause issue de novo. See Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Grimaldo, 214 F.3d 967, 976 (8th Cir. 2000). The evidence as a whole must provide a substantial basis for a finding of probable cause to support the issuance of a search warrant. See Grimaldo, 214 F.3d at 976. "Probable cause exists when the affidavit sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." Id. (internal quotations omitted).

If the issuing magistrate's probable cause determination was based on an affidavit that contained false statements made knowingly and intentionally or with reckless disregard for the truth, the search warrant is invalid unless probable cause exists when the affidavit is properly reconstructed with truthful information. See United States v. Box, 193 F.3d 1032, 1034 (8th Cir. 1999) (citing Franks, 438 U.S. at 171). More specifically, to prevail on a Franks challenge, a defendant must show:

> 1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to establish probable cause. [We have held that] [t]he same analysis applies to omissions of fact. The defendant must show: 1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

United States v. Humphreys, 982 F.2d 254, 259 n.2 (8th Cir.1992), cert. denied, 510 U.S. 814 (1993).

5

The misstatement and omission in this case concerns the officer's description of one witness's statement identifying a vehicle seen at one of the drive-by shootings listed in the search warrant affidavit. As already noted, the witness had reported seeing a new dark green or black Lincoln with tint on all of the windows. In the affidavit, however, the officer wrote only that a witness reported shots fired from "'a dark colored Lincoln' type vehicle." (Appellant's Add. at 6.) Later in the affidavit, the officer stated that the dark blue 1988 Buick Park Avenue he observed Wells washing at the duplex matched the description of the vehicle seen at the shootings.

The government does not challenge the district court's finding that Officer Lane knowingly and recklessly made this misstatement or omission, and that the information was misleading to the issuing magistrate. Instead, the government argues that the district court erred in finding that the remaining information contained in the affidavit was insufficient to support a finding of probable cause. Thus, our sole inquiry is whether the remaining contents of the warrant affidavit, absent the misleading misstatements or omissions, were sufficient to support a finding of probable cause. We conclude they were not.

When reviewing the sufficiency of an affidavit to support a finding of probable cause, we must consider the totality of the circumstances. United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999). "Further, we note that probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence." Id. An anonymous tip, however, is insufficient in itself to support a finding of probable cause. See Florida v. J.L., 120 S. Ct. 1375, 1377 (2000) (holding that an anonymous tip without more is insufficient to justify a police officer's stop and frisk of an individual).

In this case and upon our de novo review of the record, the totality of the circumstances indicates that while a broad criminal gang investigation may have been ongoing and Riccy Wells may have been in some manner associated with the people

6

who were directly implicated in the drive-by shootings described in the affidavit, the only information either directly or circumstantially linking either the duplex at 1007 North Fulbright or Riccy Wells to the shootings was the statement of one anonymous caller to the police crimestoppers hotline. When suspicions arise not from any observations of police officers "but solely from a call made from an unknown location by an unknown caller," whose reputation cannot be assessed, the police must engage in suitable corroboration of the alleged criminal activity. J. L., 120 S. Ct. at 1378. Suitable corroboration must exhibit sufficient indicia of reliability in order for an anonymous tip to provide either a reasonable suspicion of criminal activity or probable cause to arrest or to search. See id. Merely providing "[a]n accurate description of a suspect's readily observable location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity." Id. at 1379. An anonymous tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id.

The crimestoppers call in this case was not adequately corroborated to supply probable cause for a search of the duplex. We note that the caller remained anonymous and unknown to the police. Although the affidavit describes the caller as a concerned citizen who remained anonymous for his or her safety, Officer Lane testified at the suppression hearing that he merely assumed such callers fear for their safety, and he had no actual independent basis for knowing why this particular caller wished to remain anonymous. The caller stated only that he or she had "received information" that Riccy Wells, "Hennesse," and "Joey" were responsible for the shootings. (Appellant's Add. at 6.) The caller did not report any firsthand information or intimate details that could provide a reliable basis for this purported knowledge. The caller "further reported" that the vehicle and weapons used during the commission of these crimes were being kept in the garage of 1007 North Fulbright and that the duplex at 1007 North Fulbright was rented by Wells' girlfriend, "Misty." (Id.) The police were only able to corroborate the innocent details of location, identity of the renter, and Wells' relationship with the renter. Nothing corroborated an allegation of criminal conduct by Wells or criminal

activity at this address. Wells' known association with Zachary Wilson, when unconnected to any specific criminal conduct, cannot alone supply probable cause to believe that evidence of Wilson's crime would be present at Wells' duplex.

The government argues that the district court neglected to consider the totality of the circumstances by "fail[ing] to take account of the intricate web of information tying Zach Wilson and the defendant to the drive-by shootings and the car observed at the defendant's residence." (Appellant's Br. at 19.) We disagree with the importance that the government places upon this information. The affidavit demonstrates that Zachary Wilson was implicated in the shootings by several witnesses, that one witness reported seeing a dark-colored vehicle at one shooting, that the license plates on the dark blue Buick Wells was washing at 1007 North Fulbright were traced to someone listing an address that Wilson had once claimed, and that in the officer's experience, gang members often register their vehicles in the names of friends and relatives to avoid detection. The witness's description of a dark colored vehicle, which the 1988 Buick could be said to match, is simply too broad to be a reliable description. Further, the fact that the Buick's plates can be traced to an address previously used by Wilson on one occasion is too tenuous a connection to supply a reliable basis for probable cause. We do not discount the officer's statement that his experience tells him that gang members often register vehicles in the names of family members or friends, but the person to whom the Buick was registered was not identified as either. Additionally, considering the information the officer omitted from the affidavit, there is no way the twelve-year-old Buick could reasonably match the detailed description of a dark green or black new Lincoln with tinted windows.

### III.

For the reasons stated above, we affirm the district court's decision to grant Wells' motion to suppress on the basis of Franks v. Delaware.

8

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.