# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3355

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Northern |
| Robert Angelo Mangine, | * | District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 13, 2002

Filed:  September 9, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Robert Mangine appeals his convictions for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), for carrying or possessing a firearm in connection with a drug trafficking offense, *see* 18 U.S.C. § 924(c)(1)(A), and for various drug distribution and conspiracy offenses, *see* 21 U.S.C. §§ 841(a)(1), 846, 860. We affirm.

I.

Mr. Mangine first contends that the trial court[1] erred in refusing to suppress evidence that a considerable amount of methamphetamine was seized at his residence. We will affirm the factual findings of the district court relevant to a motion to suppress unless those findings are clearly erroneous, and we review *de novo* the question of whether the fourth amendment was violated. *See United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996).

According to the magistrate judge's[2] report, later adopted by the trial court on *de novo* review, the seizure of the methamphetamine from Mr. Mangine's home occurred after officers served an arrest warrant charging Mr. Mangine with assaulting a police officer. Shortly before serving the warrant, the police learned of Mr. Mangine's return to his residence in Fredericka, Iowa. An officer watched the home for approximately 90 minutes before sending a team of officers to arrest Mr. Mangine.

While officers on the front porch knocked on the door and identified themselves, an officer stationed nearby heard movement inside the house and, from a partially obstructed window, he could tell that more than one person was running about. Mr. Mangine's wife answered the door and eventually admitted that Mr. Mangine was inside. Officers entered the home and repeatedly called upon Mr. Mangine, whom they could not locate, to surrender; but he neither identified himself nor responded. When an officer warned Mr. Mangine that a police dog would be released if he did not voluntarily surrender, Mr. Mangine finally responded to the officers' commands, exiting a bedroom and lying down on the living room floor

---

[1]The Honorable Michael J. Melloy, formerly United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit.

[2]The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

as directed. As Mr. Mangine was being restrained, an officer turned and shined his flashlight into the bedroom where Mr. Mangine had been hiding. The officer observed a large stack of cash sitting on a table less than ten feet from the doorway. The officers then obtained a search warrant based in part on the large amount of cash possessed by Mr. Mangine, whom they knew to be unemployed.

Mr. Mangine maintains that the methamphetamine was seized after the execution of the arrest warrant, but prior to the issuance of the search warrant. This argument runs completely contrary to the findings of the trial court. Those findings, which are supported by considerable evidence, indicate that the illegal drugs were seized pursuant to the search warrant and not before. Because Mr. Mangine does not contest the validity of the search warrant itself, we conclude that the drugs were lawfully seized.

II.

Mr. Mangine next argues that the trial court erred in admitting into evidence the testimony of sheriff's lieutenant Richard Greenlee, a lieutenant in the sheriff's office, regarding statements that Mr. Mangine had made to Lieutenant Greenlee while Mr. Mangine was in custody. According to Lieutenant Greenlee's testimony at trial, Mr. Mangine contacted the jail administrator and asked to speak to Lieutenant Greenlee. When the two men met, Mr. Mangine became upset and expressed his desire to spend more time with his family. Mr. Mangine asked if Lieutenant Greenlee could "help him out." Lieutenant Greenlee testified that he repeatedly told Mr. Mangine that he could not help him, even as Mr. Mangine volunteered information about his drug source and the evidence seized at his residence.

Mr. Mangine argues that those statements were made to Lieutenant Greenlee during plea negotiations and thus were inadmissible under Federal Rule of Criminal Procedure 11(e)(6)(D) and Federal Rule of Evidence 410. This argument fails for a variety of reasons. For one thing, as the government notes, Mr. Mangine appears to

have disguised a late motion to suppress evidence (Mr. Mangine's oral statement) as a motion in limine. But even if the motion to suppress could have properly been characterized as one in limine, the issues it raised would be procedurally defaulted because Mr. Mangine made the motion after the deadline for motions in limine had passed as well.

Mr. Mangine's argument is in any case without merit. The relevant rules, *see* Fed. R. Crim. P. 11(e)(6)(D) and Fed. R. Evid. 410, plainly provide that only statements that are made during exchanges between a defendant and an attorney for the government are eligible for exclusion. Mr. Mangine does not allege, and indeed there is no evidence, that Lieutenant Greenlee represented himself to Mr. Mangine as an attorney for the government or even that the lieutenant implied that he had any authority to engage in plea negotiations. In fact, the conversation between Lieutenant Greenlee and Mr. Mangine simply bears none of the essential attributes of a true plea negotiation. *See United States v. Morgan*, 91 F.3d 1193, 1196 (8th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997). "Statements voluntarily offered either before any plea negotiation has begun or after a plea agreement has been reached cannot be considered statements made 'in the course of plea discussions' within the meaning of the exclusionary rules." *Unites States v. Hare*, 49 F.3d 447, 450 (8th Cir. 1995), *cert. denied*, 516 U.S. 879 (1995) (quoting Fed. R. Crim. P. 11(e)(6)(D)). The trial court did not err in admitting the evidence.

### III.

Mr. Mangine argues finally that there was insufficient evidence to support his convictions. When reviewing the sufficiency of the evidence, we evaluate the evidence "in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992), *cert. denied*, 505 U.S. 1211 (1992). All of Mr. Mangine's claims of insufficient evidence have a single theme, namely, that the various

witnesses who testified against him were not credible. Such allegations are similar to those found in *United States v. McNeil*, 184 F.3d 770, 778 (8th Cir. 1999), where the defendant complained that the government's witnesses were either co-conspirators or the beneficiaries of grants of immunity. We noted there, and we emphasize here, that the credibility of witnesses is a matter for the jury. *See id.* In this case, twenty-two witnesses testified about Mr. Mangine's drug dealing and his involvement with firearms, and the jury evidently found at least some of those witnesses credible. There was more than sufficient evidence to convict Mr. Mangine on all charges.

IV.

The judgment of the trial court is affirmed.


A true copy.


    Attest:


       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.