# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3872

_____

United States of America,

        Plaintiff-Appellee,

v.

Peter Contrell Coleman,

        Defendant-Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.
\*
\* [UNPUBLISHED]
\*

_____

Submitted: May 12, 2005
Filed: July 28, 2005

_____

Before MORRIS SHEPPARD ARNOLD, LAY, and BENTON, Circuit Judges.

_____

PER CURIAM.

After a search of his home, Peter Coleman was convicted of being a felon in possession of a firearm. Coleman argued that Detective Bjornson of the Des Moines, Iowa Police Department made misleading or false statements in his application for a warrant, and that Des Moines police officers arrested him without probable cause. The district court found that Detective Bjornson did not deliberately or recklessly mislead the judge in his application for a warrant, and that the search warrant for Coleman's home was supported by probable cause. We affirm.

While the owners were present, Barb's Pawn and Loan ("Barb's") in Des Moines, Iowa, was robbed by three men wearing stocking caps. The owners were able to provide a general description of the assailants. They described the first as approximately 5'8" tall, 180 pounds, the second as approximately 5'6" tall, 170 pounds, and the third as approximately 5'6" tall, 170 pounds. The owners also stated that the three were black males in their twenties, and were carrying a blue gym bag. Other witnesses reported a blue vehicle leaving the scene of the robbery.

The day after the robbery, three men arrived at another pawn shop in Des Moines, Pawn City, owned by Randi Ryan. One of the men, forty-four year old Anthony Mosley, attempted to pawn a unique ring. Although Ryan did not know whether Mosley was with the two other men, she thought the ring offered by Mosley looked suspicious, and called the owners of Barb's to check if the pawned ring was among the rings stolen from their store. The owners confirmed that the ring was stolen in the robbery.

The next day, Mosley again appeared at Pawn City to pawn another ring. Ryan refused to pawn the ring, telling Mosley that she believed it was stolen from Barb's. Mosley responded by saying "don't get me involved in a robbery." Ryan then called the police, who arrived and took Mosley into custody.

While in custody, Mosley told Detective Bjornson that he had encountered a Peter Copeland behind a Hy-Vee grocery store on the afternoon of the robbery. He stated that Peter was in a small white vehicle with a black garbage bag full of jewelry. Mosley stated that the two of them spoke for a while, and then Peter reached into the bag and pulled out three rings which he gave to Mosley. Mosley knew Peter's mother, Mildred Copeland, and described the location of Peter's apartment.

After investigating Mosley's statements, police corroborated much of the details provided by Mosley. Peter's mother's name was Mildred Copeland, although

Peter went by the last name of "Coleman," not "Copeland." Mosley's description of Coleman's apartment was confirmed by checking police records and by contacting the apartment manager. Police also discovered that Tomeka Taylor, Coleman's live-in girlfriend, owned a white car fitting the description provided by Mosley. Police records indicated that Coleman was twenty-five years old, 5'5" tall, and weighed 152 pounds.

Based on the information provided by Mosley, Detective Bjornson sought a search warrant of Coleman's home. When Coleman was taken into custody by police, he was driving Tomeka's white vehicle. In his affidavit in support of a search warrant, Officer Bjornson did not reveal to the issuing judge that (1) witness's observed a blue getaway car; (2) the victims reported that the assailants were carrying a navy blue gym bag; (3) Mosley entered the store with two other men during his first visit to Ryan's store; and (4) during Mosley's second visit to Pawn City, Mosley told her not to get him "involved in a robbery." In his affidavit, Officer Bjornson also included a statement noting that Coleman matched the physical description of the assailants given by the victims. The police obtained a search warrant and searched Coleman's home, which eventually led to his conviction for being a felon in possession of a firearm.

## A. <u>Franks</u> Challenge

Coleman contends that Detective Bjornson violated the rule of <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978), by deliberately or recklessly omitting and including false statements in his warrant affidavit. The district court's <u>Franks</u> determination is reviewed for clear error, and its legal conclusions are reviewed de novo. <u>United States v. Shurn</u>, 849 F.2d 1090, 1096 (8th Cir. 1988).

To receive an evidentiary hearing based upon <u>Franks</u>, a defendant is required to make a substantial preliminary showing that (1) a false statement was knowingly,

intentionally, or recklessly included in the affidavit, or that facts were omitted with an intent to make the affidavit misleading; and (2) the affidavit's remaining content, once the inappropriately included statements are removed, or once supplemented with the omitted information, is insufficient to establish probable cause. United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). We have emphasized that the substantiality requirement for making a preliminary showing under Franks is not easily met, and that "[a]llegations of negligence or innocent mistake are not sufficient." United States v. Crook, 936 F.2d 1012, 1014 (8th Cir. 1991).

Coleman fails to meet the substantiality requirement of Franks. Officer Bjornson offered credible testimony regarding his motives for including and excluding certain information in his application for a search warrant, and none of his motives involved a deliberate or reckless attempt to deceive the issuing judge. Moreover, the majority of the facts that Coleman claims were intentionally or deliberately omitted or included are of minimal relevance – the facts have no bearing upon whether Mosley was telling the truth regarding his interactions with Coleman.

First, the fact that the robbers used a navy blue gym bag, while Mosley told police that Coleman carried the jewelry in a black garbage bag, is of little relevance. Coleman could have transferred the contents of the navy blue gym bag, or the blue gym bag could have belonged to one of the other assailants. Second, Coleman argues that because the victims claimed the assailants drove a blue getaway car, the fact that he was apprehended in a white car demonstrates that he did not commit the robbery. However, the fact that Coleman did not own a blue vehicle does not mean he did not have access to a blue vehicle, or that one of the other assailants owned a blue vehicle. Third, Coleman argues that the warrant is invalid because it did not include the fact that two men entered Pawn City at the same time as Mosley. The evidence demonstrates, however, that Ryan did not report to Officer Bjornson that two men entered the shop at the same time as Mosley. Moreover, Ryan stated that the three men did not speak to or acknowledge each other while in the store, so whether they

-4-

were together was unclear. Fourth, Coleman claims that Mosley's statement – "don't get me involved in a robbery" – should have been included in the affidavit. As the district court found, however, there is nothing unusual about this statement; it is a typical response to an accusation that one is in possession of stolen goods. Like the rest of Officer Bjornson's omissions, its relevance is questionable.

Lastly, Coleman contends that Officer Bjornson deliberately deceived the issuing judge by stating that Coleman matched the description of the robbers. The victims described two of their attackers as black, in their twenties, and estimated their height at 5'6", and their weight as 170 pounds. Coleman is a black male, twenty-five years old at the time of the robbery, approximately 5'5" tall, and weighed approximately 152 pounds. Although it may be true that this is merely a general description of the assailants, Officer Bjornson's offer of this information does not constitute a deliberate or reckless attempt to deceive the issuing judge. Given his credible testimony that he did not attempt to deceive the issuing judge, the inclusion of this information, at most, demonstrates that Officer Bjornson was negligent with respect to this portion of his warrant application. Mere negligence, however, is not enough to warrant an evidentiary hearing under Franks. Crook, 936 F.2d at 1014.

## B. Probable Cause

Coleman contends that the search warrant issued for his home was not based upon probable cause. When an officer's affidavit of probable cause is based on information obtained from informers, its sufficiency is determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). A key issue for the magistrate judge is whether the provided information is reliable, or whether the information can be independently verified to establish reliability. United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995).

Much of the information provided by Mosley was independently verified by the police. The police independently verified the names of Coleman's mother and brother, the location of Coleman's apartment, the address and phone number of Coleman's mother, and a description of the car Coleman was driving when he gave the stolen rings to Mosley. The police were also able to confirm that Coleman was the same gender, age, race, and stature of the robbers.

Further strengthening Mosley's credibility was the fact that the information offered amounted to an admission that he had received stolen property from Coleman. As such, Mosley's statement incriminating himself was a statement against penal interest. United States v. Harris, 403 U.S. 573, 583-84 (1971) ("Admissions of [a] crime . . . carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search.").

Given these facts, the evidence presented and the information known when the warrant was issued support the conclusion that there was probable cause to believe that evidence from the robbery would be found at Coleman's apartment. And because the facts omitted from the search warrant were of minimal relevance, the search warrant would have been supported by probable cause even if the omitted facts were included in Officer Bjornson's affidavit.

Accordingly, the ruling of the district court is AFFIRMED.

_____