# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1982

_____

United States of America,               *
                                      *

        Plaintiff - Appellee,       *

                                      * Appeal from the United States

      v.                            * District Court for the Southern

                                      * District of Iowa.

Duane Carl Carpenter,          *

                                      *

        Defendant - Appellant.     *

                                      *

_____

Submitted: April 29, 2005
Filed:  September 6, 2005

_____

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

This case is back before us after the Supreme Court granted Duane Carpenter's petition for certiorari, vacated our earlier judgment in his case, and remanded for further proceedings in light of United States v. Booker. 125 S. Ct. 1037 (2005).  We previously affirmed all but one of Carpenter's convictions and his sentence, as well as the convictions of coconspirators Bart Underwood and Gayle Steele. See United States v. Underwood, 364 F.3d 956 (8th Cir. 2004). We affirmed Carpenter's convictions for conspiring to manufacture methamphetamine, for endangering human life during the manufacture of methamphetamine, for manufacturing methamphetamine within 1000 feet of a school, for felon in possession of a firearm,

for possession of a firearm in furtherance of a drug trafficking crime, and for possession of an unregistered short barreled shotgun.

Additional briefing was ordered following the mandate of the Supreme Court so that the parties could address the impact of <u>Booker</u> on Carpenter's case. After studying those briefs and reconsidering Carpenter's case, we conclude that he is not entitled to relief because he did not raise a Sixth Amendment objection to his sentence in the district court[1] and he has not shown plain error in the sentence imposed. <u>See</u> <u>United States v. Pirani</u>, 406 F.3d 543. We therefore affirm his convictions and sentence with the exception of his conviction for manufacturing methamphetamine. Since that conviction is barred by the double jeopardy clause, it is reversed.

I.

Duane Carpenter, Bart Underwood, and Gayle Steele manufactured methamphetamine at Carpenter's residence in Council Bluffs, Iowa. By August 2001, there were at least two to three one ounce methamphetamine cooks at Carpenter's house each week. The cooks continued until Carpenter was apprehended by law enforcement in late November 2001. Carpenter exchanged methamphetamine for precursor materials and equipment to use in the cooks. He directed most of the cooks at the residence and possessed two firearms, one that he carried while supervising the cooks and a sawed off shotgun that he kept in the house to protect his methamphetamine operation.

Steele and Underwood frequented the house and regularly participated in the cooks by peeling lithium batteries, popping pseudoephedrine pills from blister packages and crushing them, and "bubbling" the methamphetamine during the final

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

-2-

stages of production. They also obtained chemicals and supplies for Carpenter's cooks and for their own. With the assistance of Underwood, Steele occasionally conducted her own cooks using Carpenter's equipment and then shared her batch with Carpenter.

On November 27, 2001 law enforcement agents searched Carpenter's residence pursuant to a warrant and uncovered the active methamphetamine lab on the second floor. They also discovered methamphetamine production byproducts, precursor chemicals, and equipment used to manufacture methamphetamine scattered throughout the house. This included pseudoephedrine, sulfuric acid, starter fluid, waste sludge materials containing anhydrous ammonia, and lithium. A single kerosene heater with an open heating element sat in the second floor foyer as the sole source of heat for the entire house; it was plugged into an extension cord running from the house next door. Because chemical fumes pervaded the house, the police ran a safety assessment and identified several potential hazards. There were apparent dangers at the site presented by exposure to chemicals, the mixing of dangerous chemicals such as hydrogen chloride gas and flammable fuel vapors, numerous potential sources of open flames, and three large dogs running loose in the house.

Six people were apprehended in the house during the search. Steele and Underwood were in a second floor bedroom, where waste from methamphetamine cooks was found on a TV tray near the bed, including jars with residue, used coffee filters, and salt. Christy O'Neal and Twyla Pike were found in another second floor room, and Franklin Freese was in the attic. After a second sweep of the house, the police discovered Carpenter in the attic with a loaded, unregistered short barrel shotgun.

A grand jury indicted Carpenter for conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846, for manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and for felon in possession, possession of a firearm in furtherance of a drug trafficking crime, and possession of

a short barreled shotgun, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1), 924(c)(1)(A), and 26 U.S.C. § 5861(d). A superceding indictment later added charges against Carpenter for manufacturing drugs within 1000 feet of a school, and for endangering human life, in violation of 21 U.S.C. §§ 860 and 858.

Carpenter filed several pretrial motions, including motions to suppress the evidence found in the November search and for a <u>Franks</u> hearing. His motions were denied after a hearing.[2] The district court found that he had not made a substantial preliminary showing that the warrant affidavit contained false statements made knowingly or intentionally or with reckless disregard for the truth. The court also concluded that the warrant affidavit sufficiently showed probable cause because it was based on information from a reliable informant and his tip was corroborated.

A jury returned a guilty verdict on October 8 against Carpenter, Steele, and Underwood for conspiracy to manufacture methamphetamine, and it found each responsible for 500 grams or more of a mixture or substance containing methamphetamine. The jury also convicted Carpenter of manufacturing methamphetamine, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, possession of an unregistered short barreled shotgun, endangering human life during the manufacture of methamphetamine, and manufacturing methamphetamine within 1000 feet of a school. The district court denied Carpenter's motion for a new trial or a judgment of acquittal, and he was sentenced in a separate proceeding.

Carpenter was sentenced to life imprisonment for his convictions of conspiracy, manufacturing, felon in possession, and manufacturing within 1000 feet of a school; concurrent sentences of ten years for possession of a short barreled shotgun and

_____

[2]Carpenter also moved for dismissal, for election of counts, and for the court to rule in limine on evidentiary issues regarding expert testimony, Fed. R. Evid. 404(b), and prior convictions.

endangering human life; and a consecutive term of ten years for possession of a firearm in furtherance of a drug trafficking crime. He received enhancements for his role as a leader in the conspiracy and for endangering human life, and he was categorized as a career offender. He unsuccessfully sought a downward departure for overstatement of his criminal history. On his appeal, Carpenter challenges the denial of his suppression motion, the sufficiency of the evidence, and the constitutionality of the endangerment statute. He also raises a double jeopardy issue based on his convictions for manufacturing, manufacturing within 1000 feet of a school, and endangering human life. As to his sentence, he appeals the district court's findings relating to the sentencing enhancements for his role in the conspiracy and the amount of drugs produced by the conspirators. He maintains that the district court erred by designating him as a career offender, arguing that his prior conviction does not constitute a violent felony. He also argues that he is entitled to resentencing because his sentence was based on facts never found by a jury and because the district court was acting under a mandatory guideline regime.

II.

A.

Carpenter claims that his Fourth Amendment rights were violated by a search under an invalid warrant. He contends that the district court erred by not suppressing the evidence from the November search because no probable cause existed for the search warrant since it was based on information from an unreliable informant and a law enforcement official who misrepresented the underlying facts in violation of Franks v. Delaware, 438 U.S. 154 (1978). The denial of a motion to suppress is reviewed de novo with the underlying factual determinations reviewed for clear error. United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003).

A search warrant is valid under the Fourth Amendment if it establishes probable cause. Probable cause exists, if under the totality of the circumstances, a

showing of facts can be made "'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (citing United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000)). Information from an informant may be sufficient to establish probable cause "if the tip 'is corroborated by independent evidence.'" Id. at 883 (citing United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)).

Carpenter asserts that the search warrant did not support probable cause because the affiant had relied on a confidential informant who was not credible and on the fruits of a previous search later invalidated by a state court. He argues that the informant was unreliable because he offered information only to decrease his own culpability. We have recognized that informants are often motivated "in the hopes of obtaining leniency with respect to their own situation [but] that does not necessarily mean they are unreliable." Id. at 884. Here, officers could assess the informant's credibility because the information was provided in person. See id. at 883. The agent also corroborated the tip through his own investigation, which confirmed the location of the house and verified the name and address provided by the informant. See United States v. Williams, 10 F.3d 590, 594 (8th Cir. 1993). The officer had also previously received tips from the police hotline and others about drug related activities at the address. The district court did not err in denying the motion to suppress because probable cause was shown by corroborated information from a reliable informant.

Carpenter also argues that the agent relied on the fruits of a previous illegal search near Henderson, Iowa in September 2001. During the earlier search, police found a .22 caliber pistol on Carpenter, as well as precursor materials – pseudoephedrine and lithium batteries. Even without the fruits of this search, probable cause existed to issue the warrant because the application relied on a number of other sources, including the informant's tips, their corroboration, and the hotline reports.

Carpenter contends that the district court erred in denying his motion for a Franks hearing and that the evidence should have been suppressed because the agent violated Franks in obtaining the warrant. He claims that the agent actively misrepresented his investigations, affirmatively indicated that the informant had previously given reliable information when he had not, and omitted mentioning that the earlier search of Carpenter had been suppressed in state court. We review the denial of a request for a Franks hearing for abuse of discretion. Gabrio, 295 F.3d at 882.

A defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was included in the warrant affidavit either intentionally or with reckless disregard for the truth and the information was necessary to the finding of probable cause. United States v. Fairchild, 122 F.3d 605, 610 (8th Cir. 1997). Since Carpenter did not make a substantial preliminary showing that a Franks violation had occurred, the district court did not abuse its discretion by denying his motion for a Franks hearing.

To prevail on a Franks challenge to a warrant, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement or omitted a truthful statement from his warrant affidavit. Coleman, 349 F.3d at 1083. "Mere negligence on the part of law enforcement officers" does not satisfy this initial requirement. United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997). Second, a defendant must show that if the offensive content in the warrant affidavit is ignored, its remaining content "would be insufficient to establish probable cause." Coleman, 349 F.3d at 1083.

Carpenter cannot meet the first Franks requirement because he relies entirely on his own accusations that the agent acted deliberately or recklessly. He points to several minor discrepancies in the warrant affidavit, such as the listing of a different address for Carpenter in a prior police report, but these minor differences do not show deliberate or reckless falsehood. Id. at 1084. Stating that an informant has not given

false information even though he has never given information in the past does not amount to a false or reckless omission of relevant information. Gibson, 123 F.3d at 1124. Carpenter also charges that the agent falsely or recklessly omitted information that the fruits of the earlier search had been suppressed by a state court. While the agent did omit this information, Carpenter has not demonstrated that this was intentional rather than negligent. Id. at 1084-85. Thus, he has not shown that the agent acted deliberately or recklessly in preparing the warrant application. Even if Carpenter could meet the first requirement, it would not undermine the probable cause underlying the warrant, which was based on several untainted sources of information. Because probable cause existed for the warrant and Carpenter has not shown a Franks violation, the district court did not err in denying the suppression motion.

B.

Carpenter asserts that his conviction is not supported by the evidence. Carpenter challenges his convictions for conspiracy, manufacturing within 1000 feet of a school, and endangerment to human life because of alleged deficiencies in the testimony of witnesses. He argues that the testimony of the government's cooperating witnesses is unbelievable on its face.

Sufficiency of the evidence to support a jury verdict is reviewed de novo. United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000). The facts are viewed in the light most favorable to support the verdict, all reasonable inferences are accepted, and reversal is only appropriate if no reasonable jury could have found the defendant guilty. United States v. Stroh, 176 F.3d 439, 440 (8th Cir. 1999). While corroborating evidence can support the testimony of witnesses, the cases relied on by Carpenter, see, e.g., United States v . Hulse, 198 F.3d. 665, 668 (8th Cir. 1999); United States v. Del Toro-Aguilera, 138 F.3d 340, 342 (8th Cir. 1998), do not hold that witness testimony must be corroborated. Rather, the credibility of witnesses is for the jury to evaluate. See, e.g., United States v. Espino, 317 F.3d 788, 794 (8th

Cir. 2003); United States v. Mangine, 302 F.3d 819, 823 (8th Cir. 2002). Because Carpenter bases his challenge to the sufficiency of the evidence solely on witness credibility, he cannot prevail.

C.

Carpenter challenges his conviction for endangering human life during the manufacture of methamphetamine on the basis that 21 U.S.C. § 858 is unconstitutionally vague. He contends the words "harm to human life" do not place a defendant on notice as to the conduct prohibited and can lead to arbitrary enforcement. We review a challenge to a criminal statute's constitutionality de novo. United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002). A criminal statute is vague if persons of a "'common intelligence must necessarily guess at its meaning and differ as to its application.'" United States v. Smith, 171 F.3d 617, 622-23 (8th Cir. 1999) (citing Planned Parenthood of Minn. v. Minnesota, 910 F.2d 479, 482 (8th Cir. 1990)). A statute gives fair warning if either on its face, or as construed, it made reasonably clear at the relevant time that the defendant's conduct was criminal. United States v. Lanier, 520 U.S. 259, 267 (1997).

Here, Carpenter had adequate notice that his conduct was proscribed, and his arrest and conviction were not arbitrary. While Carpenter argues that he had no actual notice that he could be charged for endangerment to human life, actual notice is not required. See United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002). The plain reading of the statute indicates that Carpenter's activities fell within it. A common interpretation of the words "substantial risk of harm to human life" suggests not mental, emotional, or spiritual harm as Carpenter argues, but rather that the activity engaged in increases the likelihood of imminent physical danger to humans. The district court correctly used the plain meaning of the statutory language in its jury instructions. The jury instructions defined the risk as originating from either the process of manufacturing methamphetamine or the storage, transportation, or mixing of chemicals used in methamphetamine production. The court's instructions limited

the risk to one that was real and significantly large, that created a potential for current physical damage, and that endangered a person other than the defendant. Similar jury instructions have been held constitutional. See, e.g., United States v. Evans, 318 F.3d 1011, 1016 (10th Cir. 2003); United States v. Jackson, 199 F. Supp. 2d 1081, 1087-88 (D. Kan. 2002). The district court did not clearly err or abuse its discretion in instructing the jury, and the statute as construed and applied to Carpenter is not unconstitutionally vague.[3]

## D.

Carpenter argues that his Fifth Amendment rights were violated when he was tried and convicted on multiple counts for the same conduct. Multiplicity in charging an offense is reviewed de novo. United States v. Okolie, 3 F.3d 287, 289 (8th Cir. 1993). Under the Fifth Amendment, a defendant is protected from being subject to double jeopardy. Sattazahn v. Pennsylvania, 537 U.S. 101, 106 (2003). Where each offense requires proof of a different element, there is not a double jeopardy problem. See Blockburger v. United States, 284 U.S. 299, 304 (1932) (holding that convictions for separate counts arising out of the same narcotics sale did not constitute double jeopardy because each count required proof of an additional fact that the other did not). Carpenter argues that he cannot be convicted for manufacturing methamphetamine, manufacturing within 1000 feet of a school, and endangering life during the manufacture of methamphetamine because the manufacturing count is a

---

[3]Carpenter also challenges his convictions for endangerment and manufacturing near a school on the grounds that the district court improperly allowed the expert testimony of Special Agent Michael Mittan and Melvin Samples, a surveyor with HGM Associates, Inc., who testified that Carpenter's house was within 1000 feet of a school. To prevail on this claim, Carpenter has to show not only that a discovery rule was violated but also that the violation was prejudicial. United States v. Kuenstler, 325 F.3d 1015, 1023 (8th Cir. 2003). Carpenter has not established any prejudice.

lesser included offense of either the endangerment count or the school proximity count.

As the government conceded at oral argument, convictions under both 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860 violate the double jeopardy clause because one of the elements of § 860 is a violation of § 841(a)(1).[4] See 21 U.S.C. § 860 (West 2004); United States v. Freyre-Lazaro, 3 F.3d 1496, 1507 (8th Cir. 1993). A violation of 21 U.S.C. § 841 is a lesser included offense of 21 U.S.C. § 860. Id. While a defendant may be tried for lesser and greater offenses during the same trial, a judgment of conviction and punishment for both violates the double jeopardy clause. United States v. Jelinek, 57 F.3d 655, 660 (8th Cir. 1995). Because Carpenter was convicted and sentenced on both counts, we must remand so the district court can vacate both Carpenter's judgment of conviction and his sentence for the lesser offense of manufacturing methamphetamine in violation of 21 U.S.C. § 841.[5] Id.

---

[4]21 U.S.C. § 860 states:

Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense.

[5]At sentencing, the district court recognized that there could be a double jeopardy challenge on appeal in respect to Carpenter's § 841 and § 860 convictions,

-11-

III.

Carpenter raises a number of issues in respect to his sentence. First, he argues that the district court clearly erred in its factual findings about his role in the offense and the quantity of drugs for which he was responsible. Second, he complains the district court erred by treating him as a career offender. Third, he claims that these errors also violated his Sixth Amendment rights and that he is entitled to resentencing under Booker. The government responds that there was sufficient evidence for the district court to find that Carpenter was a leader in the conspiracy and that he should be held responsible for producing over 250 grams of actual methamphetamine. The government maintains that the district court did not err in concluding that Carpenter was a career offender. It also argues that Carpenter's complaints under the Sixth Amendment are subject to plain error review and that there is no indication the district court would have sentenced Carpenter any differently under an advisory guideline regime.

A.

Carpenter argues that the district court erred in sentencing in respect to his role in the offense. A district court's factual findings at sentencing are reviewed for clear error, United States v. Bush, 352 F.3d 1177, 1181 (8th Cir. 2003), and this remains true under Booker. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005).

Carpenter challenges the district court's enhancement of his sentence under USSG § 3B1.1 for being an organizer or leader in the conspiracy. He alleges that he

and it determined that the manufacturing conviction did not materially affect his life sentence imposed for conspiracy, felon in possession, and manufacturing within 1000 feet of a school. The court stated explicitly that vacation of the manufacturing conviction would not affect Carpenter's sentence on the other counts of conviction.

-12-

did not manage anyone and that other individuals simply used the methamphetamine lab for their own cooks. Under § 3B1.1, a defendant's offense level may be increased by four levels if he was an organizer or leader of a criminal activity involving five or more participants. A defendant who did not directly control the other conspirators may still receive an enhancement for being a leader or organizer. United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995). Here, the district court applied the enhancement based on all the evidence, including the number of people involved in the conspiracy, the activity that took place in Carpenter's house, evidence that Carpenter directed the cooks and directed others to get precursors or bury sludge in the backyard. The district court did not clearly err by finding Carpenter was a leader in the conspiracy.

According to Carpenter, the district court erred in calculating the drug quantity by overestimating the efficiency of the methamphetamine laboratory and the quantity of the precursor materials used. He contends that his cooks only produced a yield of 15% from the precursor materials, rather than the 30% yield found by the district court. The correct efficiency finding would have lowered the drug quantity he says and would have resulted in a 2 level reduction in his base offense level. A district court's findings of fact regarding the quantity of drugs attributed to the defendant is reviewed for clear error. United States v. Maggard, 156 F.3d 843, 848 (8th Cir. 1998); See Mashek, 406 F.3d at 1017. District courts determine the drug quantity attributable to the defendant by a preponderance of the evidence and make credibility decisions in the process. United States v. Johnston, 353 F.3d 617, 625 (8th Cir. 2003) (per curiam). The district court heard the evidence and found the drug quantities had been proven by a preponderance of evidence. Its reliance on trial testimony and the jury's credibility findings in its determination of drug quantity was not clear error.

Finally, Carpenter contends that he is not a career offender under USSG § 4B1.1 because his Iowa conviction for "going armed with intent" is not a crime of violence. Under § 4B1.1, a defendant is a career offender if "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance

offense" and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1. We have already determined that an Iowa conviction for going armed with intent qualifies as a crime of violence for sentencing purposes and can be used in determining whether a defendant is a career offender. See United States v. Gomez-Hernandez, 300 F.3d 974, 980 (8th Cir. 2002). Because Carpenter's Iowa conviction was for a crime of violence, the court did not err in finding him a career offender for sentencing purposes.

B.

Carpenter now argues that he is entitled to resentencing because the district court sentenced him based on facts not found by the jury and under a mandatory guideline regime. He first argues that he is entitled to resentencing without having to show the district court committed plain error both because of the procedural posture of his case at the time Booker was decided and because he preserved error at the district court. In the alternative, he argues that there was plain error because there is a reasonable probability the district court would have sentenced him differently under an advisory guideline system.

Carpenter argues that he should not have to show plain error to obtain resentencing because at the time the Supreme Court decided Booker there was no final judgment in the district court because it had not yet acted on remand to vacate one of his convictions on double jeopardy grounds. Although the district court had yet to vacate the conviction for manufacturing methamphetamine, Carpenter still must establish plain error if he forfeited his Sixth Amendment objection in the district court. Booker, 125 S. Ct. at 769; Pirani, 406 F.3d 543 (2005); Fed. R. Crim. P. 52(b).

Carpenter's only objection at sentencing was that the district court erred in its factual findings. He did not raise any Sixth Amendment issue or object to the application of mandatory sentencing guidelines or cite Apprendi v. New Jersey, 530 U.S. 466 (2000). As a result, we review Carpenter's sentence for plain error. See

-14-

United States v. Pirani, 406 F.3d 543, 548-49 (8th Cir. 2005) (en banc).  To establish plain error, Carpenter must establish (1) an error, (2) that is plain, that not only (3) affected his substantial rights, but also (4) "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997).  When, as here, the district court treated the guidelines as mandatory, the first two prongs are established.  To meet the third prong, Carpenter must show a "reasonable probability" the district court would have imposed a more lenient sentence under the now advisory guidelines. Pirani, 406 F.3d at 551.

Carpenter argues that the district court committed plain error by imposing a sentence that held him responsible for over 250 grams of actual methamphetamine when the jury only found him responsible for 500 grams or more of a methamphetamine mixture.  Carpenter argued at sentencing that a base level for between 50 and 150 grams of actual methamphetamine would more accurately reflect the actual amount of methamphetamine for which he should be held responsible. The district court disagreed and held Carpenter responsible for 256.83 grams of actual methamphetamine based on "the record of this case."  Carpenter had the opportunity to present all of his arguments to the district court, and the district court agreed with the government's position.  There is nothing in the record that indicates the district court would have imposed a different sentence had it treated the guidelines as being advisory only.

The district court imposed Carpenter's sentence of life imprisonment plus ten years on a record which included facts about his dangerous method of manufacturing large amounts of methamphetamine near an elementary school, his attempt to evade arrest by hiding in his attic with a sawed off shotgun during the warrant search, his prior record and conviction for a violent felony, his repeated unlawful possession of firearms, and the danger he presented to the public. See 18 U.S.C. § 3553(a).

-15-

IV.

For the foregoing reasons, we once again affirm Carpenter's conviction for conspiracy to manufacture methamphetamine, manufacturing methamphetamine within 1000 feet of a school, endangering human life during the manufacture of methamphetamine, felon in possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, and possession of an unregistered short barreled shotgun. We reverse Carpenter's conviction for manufacturing methamphetamine in violation of 21 U.S.C. § 841, and remand to the district court for it to vacate the judgment on double jeopardy grounds since it is a lesser included offense of 21 U.S.C. § 860. After further briefing and consideration of his sentence in light of Booker, we again affirm Carpenter's sentence, except for that portion imposed on the count of manufacturing methamphetamine.[6]

HEANEY, Circuit Judge, concurring.

I continue to believe that a defendant's challenge to the factual basis for a sentence enhancement preserves his Sixth Amendment sentencing claim. See United States v. Pirani, 406 F.3d 543, 555-62 (en banc) (Heaney, J., dissenting). Moreover, I adhere to the view stated by Judge Bye in Pirani, that defendants who did not properly preserve their Booker claims in the district court are nonetheless generally entitled to resentencing under a constitutional regime. Pirani, 406 F.3d at 562-67 (Bye, J., dissenting). Because a majority of our court held to the contrary on both counts, however, I concur.

_____

---

[6] Carpenter's recently filed pro se motion for an evidentiary hearing is also denied. In this motion Carpenter reargues many of the points previously raised relating to the search warrant, just as in his supplemental briefing. We also note that any claim for ineffective assistance of counsel should almost always be brought by motion under 28 U.S.C. § 2255, rather than on direct appeal.