# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1298

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Ronnie Leroy Snyder, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 16, 2007
Filed: January 7, 2008

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ronnie Leroy Snyder entered a conditional guilty plea to manufacturing and attempting to manufacture more than 5 grams of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. He was sentenced as a career offender to 208 months in prison. Snyder appeals the district court's[1] denial of a Franks hearing on his motion to suppress evidence and its application of the career

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

offender guidelines based on his previous burglaries of commercial buildings. We affirm.

On October 21, 2003 a hardware store employee in Calmar, Iowa contacted Deputy Sheriff Felton to report suspicious activity in his store. He told Felton that a man who appeared to be under the influence of drugs had shopped for 45 minutes and purchased items that could be used to manufacture methamphetamine. He described the man and the white Lincoln he drove with its Iowa license plate number. After a few hours of investigation, Felton determined that the customer was likely Ronnie Snyder. Police Chief Balik from the Calmar Police Department told Felton that Snyder was living in a trailer in town with his former wife and gave him the address.

The same afternoon Felton observed the white Lincoln in the driveway of the wife's trailer. That evening officers saw Snyder drive away from the trailer in the car. They stopped and arrested Snyder on an outstanding warrant from Fillmore County, Minnesota. A search revealed that Snyder had some marijuana in his pocket and over $536 cash on his person. He also appeared to be under the influence of a substance other than alcohol. An initial search of the car uncovered a digital scale, a two way radio, a vial of clear liquid, a cooking thermometer, a recipe for methamphetamine, two letters about drugs, and starter fluid. Officers later searched the trailer pursuant to a search warrant obtained by Felton. They found 828 pseudoephedrine tablets and packaging for an additional 761 pseudoephedrine tablets, as well as 1.5 grams of methamphetamine.

Snyder was indicted on one count of possessing pseudoephedrine pills to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2), and one count of manufacturing and attempting to manufacture more than 5 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Snyder filed a pretrial motion to suppress all evidence seized under the search warrant, asserting that Felton had included false information in the affidavit for the search

warrant and omitted material facts from it. He requested an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978). The magistrate judge[2] recommended that the motion be denied. Snyder then entered a conditional guilty plea to the methamphetamine count which preserved his right to challenge the denial of his suppression motion. The pseudoephedrine count was dismissed on the government's motion.

After accepting Snyder's guilty plea, the district court adopted the magistrate's report and recommendation and denied the request for a Franks hearing, concluding that Snyder had not shown an intentional or reckless omission or falsehood in the affidavit and that the search warrant was supported by probable cause even if the disputed information were removed from the affidavit and Snyder's suggestions added. After denying Snyder's motion to withdraw his guilty plea and his motion for a sentencing variance, the district court sentenced Snyder as a career offender to 208 months.

On appeal Snyder maintains that omissions and falsehoods in the affidavit render the search warrant invalid and trigger his right to a Franks hearing. The affidavit stated that Snyder reportedly purchased "one gallon of Coleman fuel, a box of platex plastic gloves, hose clamps, masking tape, a hasp, a pack of 24 AAA lithium batteries and a quart of Snap brake fluid" and that these "types of items . . . (with the exception of the hasp) are commonly used in the manufacture of methamphetamine." Snyder argues that this list contained falsehoods because he purchased alkaline, not lithium, batteries[3] and that it omitted other items he bought which are not used to

---

[2] The Honorable John A. Jarvey, then Chief Magistrate Judge for the United States District Court for the Northern District of Iowa, now United States District Judge for the Southern District of Iowa.

[3] Lithium batteries may be used to synthesize methamphetamine by the lithium-ammonia reduction method. See United States v. Allen, 297 F.3d 790, 793 (8th Cir. 2002).

synthesize methamphetamine (a light bulb, utility rope, and adaptor). Snyder further objects that the October 2003 affidavit erroneously noted that he had an active arrest warrant from Minnesota, but that records from the National Crime Information Center show that the Minnesota warrant had not become active until February 4, 2004. Finally, Snyder contends that the affidavit wrongly indicated that he lived in the trailer with Lori Snyder, his former wife. Snyder asserts that he actually lived in Illinois, that he had given an Illinois address to the arresting officer, and that Lori Snyder's last name was now Mendez. The government argues that the district court properly denied the motion to suppress without holding a Franks hearing. We review the denial of a Franks hearing for abuse of discretion. United States v. Carpenter, 422 F.3d 738, 745 (8th Cir. 2005) (citation omitted).

Under Franks and its progeny, a defendant may challenge a search warrant on the grounds that the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth. See 438 U.S. at 171; United States v. Reinholz, 245 F.3d 765, 774 (8th Cir. 2001). To obtain a Franks hearing a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause, a requirement which is "not easily met." United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (citation omitted). Thus, to prevail on a Franks claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit. Carpenter, 422 F.3d at 745 (citation omitted). The defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. Reinholz, 245 F.3d at 774 (citation omitted). Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood. Franks, 438 U.S. at 171; United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006) (citation omitted).

Snyder's attempts to show that Felton knew or should have known of the errors and omissions in the affidavit fall short of this rigorous standard. According to Snyder, the store did not sell lithium batteries at the time and the amount of the total bill should have signaled to Felton that the batteries were too cheap to have been lithium. Even assuming this to be true, however, the informant might have made a mistake or Felton might have misheard him. As to the omissions, there is no evidence that Felton knew that 1) Snyder had purchased a light bulb, utility rope, and adaptor or 2) that Snyder had provided an Illinois address on arrest. As to the Minnesota arrest warrant, Felton had been advised that the warrant was still valid after officers had checked Snyder's criminal history and contacted the Fillmore County Sheriff's Office in Minnesota. Snyder's points do not amount to the required showing of intentional or reckless falsehood or omission. See Carpenter, 422 F.3d at 745 (no Franks violation where defendant did not demonstrate omission was "intentional rather than negligent" and only discovered minor discrepancies in affidavit).

Moreover, the affidavit would still have established probable cause to search the trailer if the allegedly false information was excised and the omitted information added. See Reinholz, 245 F.3d at 774. An affidavit establishes probable cause for a warrant if it "sets forth sufficient facts to establish that there is a 'fair probability that contraband or evidence of' criminal activity will be found in the particular place to be searched." Davis, 471 F.3d at 946, quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Felton acted on a tip about Snyder's purchases of methamphetamine precursors and equipment from an informant who had provided reliable leads on three prior occasions. See Gabrio, 295 F.3d at 883 (informant's tip may establish probable cause if informant has track record of supplying reliable information). Felton had reason to believe Snyder lived in the trailer based on Chief Balik's remarks and his own observation that the white Lincoln was in the driveway. In addition, other officers had seen Snyder drive the car away from the trailer. The search of Snyder and the car after the arrest produced several items associated with illegal drugs, including a recipe for methamphetamine and marijuana. The affidavit reflected these facts and thus provided

probable cause for the warrant. Even if the information about Snyder's additional purchases and his Illinois address were added to the affidavit, it would not change the probable cause determination. For these reasons, we conclude that the district court did not abuse its discretion by denying Snyder's motion for a <u>Franks</u> hearing.

Snyder also argues that the district court erred by sentencing him as a career offender based on two burglaries of commercial buildings. The government responds that the district court correctly applied the career offender provision. We review de novo the district court's conclusion that burglaries of commercial buildings constituted crimes of violence for purposes of the career offender provision. <u>United States v. Mohr</u>, 407 F.3d 898, 901 (8th Cir. 2005) (citation omitted).

Snyder acknowledges that he has three prior offenses that could have been predicate offenses, one burglary of a dwelling and two burglaries of commercial buildings, but he argues that the burglaries of commercial buildings should not categorically qualify as crimes of violence for purposes of U.S.S.G. §§ 4B1.1(a)(3) and 1.2(a)(2). Section 4B1.1(a)(3) of the United States Sentencing Guidelines provides that a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense" to be considered a career offender. Crime of violence is defined in § 4B1.2(a)(2) to include any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." We have held that burglary of commercial buildings qualifies as a crime of violence under § 4B1.2(a)(2). <u>United States v. Hascall</u>, 76 F.3d 902, 904 (8th Cir.), <u>cert. denied</u>, 519 U.S. 948 (1996); <u>see also</u>, <u>United States v. Blahowski</u>, 324 F.3d 592, 595-97 (8th Cir. 2003) (reaffirming <u>Hascall</u>). Snyder urges us to reverse <u>Hascall</u>, but one panel of this court cannot overrule another's opinion. <u>See, e.g.,</u> <u>Mohr</u>, 407 F.3d at 901-02 (citation omitted) (refusing to revisit <u>Hascall</u>). We thus see no error in invoking the career offender provision.

For the foregoing reasons, we affirm the judgment of the district court.

_____